Hon. ASA O. ALDIS,
Hon. JAMES BARRETT, } Assistant Judges.
Hon. LOYAL C. KELLOGG,

---

THE BANK OF MIDDLEBURY *v.* ALONZO L. BINGHAM, ASAHEL BINGHAM, MERRILL BINGHAM AND B. F. HASKELL.

*Promissory Note. Action. Banks. Usury. Principal and Surety.*

A promissory note executed for the purpose of raising money, and made payable to a particular person or corporation, with the expectation that it will be discounted by the payee, may be taken and discounted by another, without the consent of the surety, and the person thus advancing the consideration may hold such note as a valid security for the money, even against the surety, and may enforce payment by suit in the name of the payee, unless he refuses to allow his name to be used for that purpose.

Bank of Middlebury *v.* Bingham et al.

The party, thus advancing the consideration for the note, becomes the real holder, and a delivery to him is a valid delivery of the note.

The ordinary prohibition in the charter of a bank against demanding more than six per cent. interest on a loan or discount, as well as the general banking law on the same subject, have no greater effect upon a note or other security given for a loan made contrary thereto, than the ordinary statute against usury has upon contracts made by individuals. The security is invalidated only to the extent of the usury.

*It seems* that the reservation of usury upon the discount of a note without the knowledge of the surety, furnishes no greater ground of defence to the latter than to the principal himself; and that such defence is limited to a right to the deduction of the usury.

The principal on a promissory note previous to its maturity sent the holder a letter containing a draft, and stating that he hoped to be able to pay the note soon, in which case the amount of the draft was to be applied in part payment; but that if he could not do so the holder should take that sum as interest in advance for three months after the maturity of the note. The holder made no reply to this letter, but procured the draft to be cashed and held the proceeds without making any application thereof upon the note until the expiration of three months after the maturity of the note, when he endorsed it as three months interest thereon. *Held*, that these facts did not import a binding contract to delay the payment of the note; and that the surety was not thereby discharged.

ASSUMPSIT upon two promissory notes for two thousand five hundred dollars each, signed by the defendants, dated Dec. 7th, 1853, and payable to the plaintiffs in three months from date. Plea, the general issue, and trial by jury at the December Term, 1859,—PIERPOINT, J., presiding.

The plaintiffs introduced the notes declared on in evidence, and rested their case.

The defendants called Merrill Bingham as a witness, who testified as follows: " I signed the notes in suit for the benefit of A. L. Bingham. Had no interest in them, signed them as surety. Had no knowledge or expectation that the note was to be used in any other manner or place than to be discounted at the Bank of Middlebury, as imported on their face."

Joseph Warner was then called as a witness by the defendants, and testified as follows: " These notes are in my hand-writing. I suppose the notes were drawn at their dates. Alonzo Bingham spoke to me several times about raising a large sum of money

for him. I told him we could not do it, as the bank was not dis-
counting, but I would see Paris Fletcher, and see if he had not
got it. When I saw Fletcher he agreed to raise one half and I
the other. It was agreed by Alonzo that he would get these
names on the note that are now on it. I have no recollection
how the notes came to be written in the name of the bank.
Bingham told me he had got to raise a large sum, and quite
likely, told me what he was to do with it. I wrote the notes,
and he took them and got them signed. Cannot say he had a
blank note. He didn't have the money till I got the notes.
These notes never were discounted by the Bank of Middlebury,
never expected they would be, never were on the bank books,
and the bank never had any interest in them whatever. Fletcher
took one, and I took the other, and they remained in our pos-
session until the suit was brought. Since then I have had the
possession. There was a bonus of three hundred dollars, above
the legal rate of interest paid to us for raising the money. This
three hundred dollars was for the use of the money for three
months, there was no contract of payment other than as expressed
in the note. I received the sums endorsed.

I received the following letter from A. L. Bingham about the
time of its date, 18th March, 1854 :

'WEST CORNWALL, March 18th, 1854.

MR. WARNER,—*Dear Sir :* I have learned nothing from L.
G. Bingham yet. It can't be that he has used the money for
himself, I think, but still I do not know why I do not hear from
him. I must go down and see about it again. I enclose you a
draft of two hundred dollars, to pay interest on these two notes;
one hundred you are take for yourself, and ̤one hundred you are
to hand to Mr. Fletcher, with the understanding that when I go
down, if I get the money to pay the notes we will make it right,
but if not, I must let the notes run three months longer, and pay
the two hundred dollars as interest for three months, which pays
you well for the use of the money.

Yours truly, A. L. BINGHAM.'

Don't remember that I made any answer to the letter. I sent
the draft therein mentioned forward for payment, that nothing
should be lost from my neglect to do so ; presume I did with the

avails of the draft just what was directed in the letter.   One-half went to Fletcher, and one-half to me.   It was a sight draft.   I used my half of the draft and Fletcher his.   I kept the avails of the draft until the three months expired, and then applied it.   I put the endorsements of interest on the notes on the 19th June following. There was a mistake in the endorsement, it should read to 7th June, 1854, instead of to 7th March.   Alonzo Bingham was not here when the endorsements of interest were made.   I don't usually make these endorsements until the note is due, as it may affect the liability of the signers.   I did not apply the money when received, as it would have bound us to wait the three months.   I had the impression that if I applied the interest on the notes before the interest fell due, it would be an extension without the assent of the sureties, and would discharge them.   I laid the money proceeds of the draft aside, either in my pocket-book or in the drawer at the bank—did not keep it separate from my other money.   Alonzo made the bargain for the money, and took it.   I can't say who was to use it—nothing was said about it.   In the bank it is not common to let the notes lie as these have."

*On cross examination.*—" I had no knowledge whether these men were sureties other than what appeared in the notes. Remember talking with Asahel Bingham.   Haskell said he had notes put into his hands as surety to indemnify him, but he had given them up to Merrill.   I thought the endorsement might affect the liability of the other signers.   I had no intention to deceive or conceal anything from the defendants in drawing the notes payable to the Bank of Middlebury.   I did not think of its having any such effect.   I don't remember at whose suggestion it was done.   I was the cashier, and Fletcher the president of the bank, and both of us were directors."

B. F. Haskell, one of the defendants, testified:   " I have examined these notes.   I signed them as surety; had no interest in the debt at all.   Had no knowledge or belief when I signed them, that the notes were to be used for any other purpose or at any other place than to be discounted in the ordinary course of business at the bank, to which they were made payable.   Supposed they were to be discounted at the bank.   Were signed at

my store, in Cornwall. No one present but Alonzo Bingham. The notes were then filled up as they are now. I did not learn they were not the property of the bank until about two years ago; then had a conversation with Warner about it. He said he would admit there was three hundred dollars interest for three months taken out of the notes. I told him that if I had known the notes were to be shaved or used anywhere but at the bank, I would not have signed them, and I would not. He said that as it came out of the sureties, he would apply the extra on the note; said there was also two hundred dollars more received on the note; do not endorse notes to be shaved. Warner gave me a statement shortly after the suits were brought, of these notes, signed by him as cashier, and describing the notes as " due the Bank of Middlebury." At that time I had no knowledge that any other person than the bank was interested."

The defendants then offered to show than when these notes matured and for more than six months thereafter, Alonzo L. Bingham was solvent and able to pay them, and that the notes might then have been collected of him; but that he had since failed, and is now, and was, when these suits were brought, wholly insolvent. This evidence was objected to by the plaintiff and excluded by the court, to which the defendants excepted.

The plaintiffs' charter, granted in 1835, contained the following provision: " The said corporation shall not demand any greater interest on any loan or discount than at the rate of six per cent. per annum." In 1845 this charter was extended and continued in force with all its provisions.

The defendants seasonably objected to the evidence of the intention of Warner and Fletcher in drawing the notes payable to the bank instead of to themselves, but the court overruled the objection and admitted the evidence.

No other evidence was introduced by either party.

The counsel for the defendants requested the court to charge the jury:

1st. That if the jury believed from the evidence that Warner made an agreement with A. L. Bingham to the effect that Warner and Fletcher should advance to him the sum of four thousand and seven hundred dollars upon two notes for two thousand and

40

five hundred dollars each, at three months, signed by the defendants, which notes were then afterwards to be procured by A. L. Bingham; that Warner then drew up the notes making them payable to the bank without any expectation on the part of himself, Fletcher or A. L. Bingham that the bank was to discount or have any interest in the notes; that Haskell, Merrill Bingham and Asahel Bingham signed the notes as sureties without any knowledge or information that they were to be used for any purpose except that of being discounted by the bank, or that indicated upon the face of said notes, and that these sureties signed the notes supposing they were to be discounted by the bank, and would not have signed them, had they known that they were to be disposed of under the contract between A. L. Bingham and Warner, which the evidence tended to prove; and that the notes were delivered to Warner under such contract, Warner only paying four thousand and seven hundred dollars therefor; then that the defendants Asahel and Merrill Bingham and Haskell were not liable on the notes.

2d. That if the jury should find that Warner, after the contract for the loan was made, drew up these notes payable to the bank instead of himself and Fletcher, with the view of concealing from the defendants Merrill and Asahel Bingham and Haskell the true nature of the transaction, and of leading them to believe that the notes were to be discounted by the bank, and they signed the notes under such belief and would not have signed them had they been aware of the contract under which the notes were to be delivered to Warner, or

3d. That if the jury found that the notes were drawn up by Warner in a manner calculated to deceive the persons, who were to sign them, as to the true nature of the transaction, and to induce them to believe that the notes were to be discounted by the bank, and not to be disposed of under such contract, and that Merrill and Asahel Bingham and Haskell were deceived by the form of the notes, and signed the same, when they would not have signed them, if they had been advised of the true nature of the transaction, then the defendants Asahel and Merrill Bingham and Haskell were not liable.

4th. That this contract and these notes being made to the bank

and the suit being in the name of the bank, the right of recovery upon them must be determined by the same rules as though the bank were the party in interest. j

5th. That the discounting of these notes reserving three hundred dollars or twenty-four per cent. by way of discount upon them for three months, was in violation of the charter of the bank, and of the general laws of the State; that no recovery could be had upon them if the bank had discounted them; and therefore that no recovery could be had upon them in this case.

6th. That the receipt by Warner of the draft for two hundred dollars from A. L. Bingham in the letter enclosing it, and upon the conditions therein contained, without making any objection thereto, and the use of·the draft by Warner, constituted a valid contract to delay the payment upon and enlarge the time of said notes for the period of three months after the same became due; and that if this was done without the knowledge and consent of the sureties they were discharged thereby, and this whether they were known to Warner to be sureties or not, but especially if they were known to Warner to be sureties.

The court declined to charge the jury as requested by the defendants, but charged them in substance as follows :

That the action might be maintained and prosecuted in the name of the bank, although the bank never had any custody or possession of or any interest in the notes, and although there was no evidence other than the pendency of the suit, showing any consent of the bank to have its name used in the prosecution of the suit, and that the fact that these notes were discounted at a usurious rate constituted no objection to a recovery upon them inasmuch as this rate was taken by Fletcher and Warner and the bank was not connected with the discount; that if Warner, after the contract for the loan was made with A. L. Bingham, drew the notes payable to the bank, with the purpose and intent of concealing from those who should afterwards sign them, the true nature of the contract, and of inducing them to sign the notes when they would not otherwise have signed them, or did it knowing, or having reason to believe, that Alonzo L. Bingham so intended thereby, and that, in consequence of the notes being so drawn, the other signers were deceived and did sign them, that

would constitute such a fraud on the part of Warner as would discharge the defendants Asahel and Merrill Bingham and Haskell; but that if Warner drew the notes without such purpose or knowledge, it would constitute no objection to a recovery against Asahel and Merrill Bingham and Haskell, that they signed them without any knowledge of the contract between A. L. Bingham and Warner, and although they were deceived by the fact that the notes were drawn payable to the bank, so that they signed them under the belief and supposition that they were to be discounted by the bank, and would not have signed them had they been aware that the notes were to be disposed of under the contract with Fletcher and Warner, or otherwise than to be discounted by the bank.

On the point of the effect of the receipt of the draft for two hundred dollars by Warner from A. L. Bingham, under the circumstances given in evidence, the court charged that the receipt of the draft in the letter and the sending of it forward and the conversion of it into money and the retention of the money, if for the reason and in the manner testified to by Warner, would not of themselves, as matter of law, create a valid contract for the extension of the time of payment of the notes beyond the period of their maturity; but that if Warner in fact received the draft, or its proceeds, as a payment of the interest in advance, it would, under the circumstances, have that effect; that, if Warner received the draft, and converted it into money, for the reason stated by him, and retained the money without making any application of it upon the notes until after the three months from the maturity of the notes had expired, and without agreeing to give time, he might do so; and in that case no contract to delay the time of payment would, under the circumstances, arise.

To the admission of the evidence objected to by the defendants, to the refusal of the court to charge as requested, and to the charge, as given, the defendants excepted.

*Linsley & Prout* and *Roberts & Chittenden,* for the defendants.
I. The case shows that the notes in suit were never delivered to or in possession of the Bank of Middlebury, nor received, by any one for the bank.

No action can be maintained upon a promissory note, which has not been delivered to the payee, or to some one for his use; until such delivery the contract cannot take effect; *Woodford* v. *Darwin*, 3 Vt. 82; *Chamberlain* v. *Hopps*, 8 Vt. 94.

The assent of the bank to the prosecution of the suit was not shown; it was certainly not conceded.

Without such assent shown, one essential element of a contract, *i. e.*, the assent of the promisee is wanting. and it is not so far perfected that an action can be maintained upon it; *Bank of Burlington* v. *Beach*, 1 Aik. 62; *Adams Bank* v. *Jones*, 16 Pick. 574; *Prescott* v. *Brinsley et al.*, 6 Cush. 233.

II. *Treating these notes as contracts made with the bank, no action can be maintained upon them.*

1. They were such contracts as the charter of the bank not only conferred no power to make, but they were expressly prohibited by it. The contract, therefore, was entirely void; 2 Kent Com. 299–300; *Head* v. *Prov. Ins. Co.*, 1 Peters Cond. 371; *Dandridge* v. *Bank of U. S.*, 6 Peters Cond. 440, 441; *Bank of Augusta* v. *Earl*, 13 Peters 587; *East Anglian Co.* v. *Eastern Co.*, 7 Eng. L. & E. 505; *Wheeler* v. *Russell*, 17 Mass. 258; *Springfield Bank* v. *Merrick*, 14 Mass. 332; *Bank of U. S* v. *Owens*, 2 Peters 527; *Bank of Chillicothe* v. *Swayne*, 8 Ohio 250; *Creed* v. *Commercial Bank*, 11 Ohio 489; *Commercial Bank* v. *Reed*, 11 Ohio 498; *Miami Co.* v. *Clark*, 13 Ohio 1; *Beach* v. *Fulton Bank*, 3 Wend. 73; *Orr* v. *Lacey*, 2 Doug. (Mich.) 230; *Seneca Bank* v. *Lamb*, 26 Barb. 595; 18 U. S. Dig. 222; *Langton* v. *Haynes*, 37 E. L. & Eq. 590; *DeBegnis* v. *Armistead*, 25 Eng. C. L. 47; *Talmage* v. *Pell*, 3 Seld. 328, 343; Chitty on Cont. 695–6–7; Smith on Cont. 140 *et seq.*

Nor can it be said that Warner in this case took the usury, and not the bank, and so the bank is not affected by the corrupt act of Warner.

The answer to such suggestion is, first, the defence does not rest upon the question of usury under the general law, but upon the illegality of the contract as one prohibited by the charter, and hence, *ex necessitate*, placed beyond the power of the bank, or of any one in its name to make.

Second, the necessary theory of the action is that the contract

was made with the bank, otherwise the suit falls ; and it would be absurd to say that Warner, in an action in the name of the bank can secure an advantage which the bank under the contract could not claim, or escape a consequence, which is a logical necessity of the form of both the contract and the action.

Again, if the act of Warner in making an usurious discount of the notes is not to be treated as the act of the bank, it must be upon the ground that the contract was made with him and not with the bank ; *if so this again is a contract which the sureties never intended to make, and which the writings do not import.*

III. *The signatures, (except that of Alonzo Bingham) were obtained by what in law amounts to a fraud.*

The notes were not negotiable, have never been assigned, and still remain in the hands of the parties to whom they were first delivered. The law applicable to strictly commercial paper, cannot, therefore, be applied to them.

Irrespective of the form of the paper, these sureties are to be treated as mere guarantors for A. L. Bingham; TINDALL, Ch. J., in *Stone* v. *Compton.* 35 E C. L. 63; Ld. Chancellor TRURO in *Owen* v. *Hobert*, 3 Eng. L. & E. 120.

As guarantors their obligation cannot be extended beyond its terms, or varied ; *Myers* v. *Edge*, 7 Term 254 ; *Walsh* v. *Baillie*, 10 Johns. 180.

The act of drawing the note in this form, and entrusting it to A. L. Bingham to procure the signatures of the others, as sureties, was itself a representation to them that the note would be used at the bank, in the way of an ordinary discount, that is that five thousand dollars, less the legal discount for three months, would be received upon it.

The amount of money to be received on the note was a fact material to the sureties, as their own indemnity depended *pro tanto* upon that.

The materiality of that fact, as well as of the party to whom the note might be negotiated, is in this particular case shown by the testimony of Haskell, that he would not have signed the note if he had known of the intended use; *Myers* v. *Edge*, 7 T. 254 ; *Walsh* v. *Baillie*, 10 John. 180 ; *Weed* v. *Bently*, 6 Hill 56.

In such case, the creditor is bound to a disclosure of all facts

likely to affect the discretion of the surety in undertaking the obligation ; 1 Story's Eq.. secs. 324, 325, 383, 214, 215 ; *Owen* v. *Homan*, 3 Eng. L. & Eq. 112 ; S. C., 25 *ib.* 1 ; *Franklin Bank* v. *Cooper*, 36 Maine 79.

Whether any fraud was intended on the part of Warner, was immaterial. A represention made which is calculated to deceive and does deceive is, *in law*, a fraud, irrespective of the intent ; *Stone* v. *Compton*, 35 Com. Law 57 ; *Jackson* v. *Duchaire*, 3 T. 551 ; *Pidcock* v. *Bishop*, 10 Com. Law 37.

The very form of the paper indicated to the other signers, the purpose for which it was intended, and when returned to Warner, indicated to him the purposes for which they consented it should be used ; *Bank of St. Albans* v. *Smith*, 30 Vt. 149 ; *Prescott* v. *Brinsley*, 6 Cushing 234 ; *Manufacturers' Bank* v. *Cole*, 39 Maine 188 ; *Gore* v. *Ross*, 2 B. Monroe 299 ; 5 U. S. Dig. 817 ; *Clinton Bank* v. *Ayer*, 16 Ohio 282 ; *Miller* v. *Stewart*, 9 Wheat. 703 ; *Bonar* v. *McDonald*, 1 Eng. Law & Eq. 1.

IV. As to the note, in which the signers are not described as "principals," these sureties are discharged by the transactions connected with the letter and the draft.

This transaction, in law, amounts to an acceptance of the money upon the precise conditions named, and to an agreement to delay ; *McGlynn* v. *Billings*, 16 Vt. 329 ; *McDaniels* v. *Lapham et al.*, 21 Vt. 222 ; *Cole* v. *Transportation Co.*, 26 Vt. 87 ; *McDaniels* v. *Bank of Rutland*, 29 Vt. 230 ; *People's Bank* v. *Pearsons et al.*, 30 Vt. 711.

*J. W. Stewart* and *E. J. Phelps*, for the plaintiff.

I. In the absence of fraud, the notes may be recovered on in the name of the bank, for the benefit of those who advanced the consideration.

If the plaintiff is a party to the note, assents to the use of his name, and sues in behalf of the owner, the maker cannot defeat the action by speculations as to the plaintiff's title ; *Bank of Burlington* v. *Beach*, 1 Aiken 62 ; *Keith* v. *Goodwin*, 31 Vt. 269 ; *Bank of Montpelier* v. *Joyner et al.*, ante p. 481 ; *Austin* v. *Burchard*, 31 Vt. 589 ; *Hackett* v. *Kendall*, 23 *ib.* 277 ; *Mottram* v. *Mills*, 1 Sandf. S. C. 37, and cases there cited.

II. The assent of the bank to the prosecution of this suit cannot be questioned. Their appearance by attorney is conclusive; Coit et al. v. Sheldon, 1 Tyler 300; Proprietors, etc., v. Bishop, 2 Vt. 231; St. Albans v. Bush, 4 Vt. 58.

III. There was no fraud practiced upon the defendants.

1. There was no evidence tending to prove any fraudulent representation, concealment, or intent; and the defendants were not entitled to have the question submitted to the jury.

2. But if any tendency to prove fraud can be discovered in the evidence, the verdict of the jury, to whom it was fully and fairly submitted, is conclusive.

3. Unconnected with any actual misrepresentation or fraudulent concealment, the drawing of the notes payable to the bank, for an innocent purpose, was not, of itself, a fraud; Keith v. Goodwin, supra.

3. Nor did the payment of usury, whether known to the surety or not, operate to release him. He could not be hurt by it, because the law placed it at all times in his power to have the usury applied to reduce the amount legally due. Nor was there any attempt to conceal it from him, nor any proof that it was in fact concealed.

In the multitude of cases against sureties upon notes where usury has been agreed for or taken, it has never been discovered that the sureties were discharged unless where the statute expressly avoided the debt.

There is nothing in the present case to vary the ordinary rule on this subject.

IV. If there was no fraud, actual or constructive, the " supposition" of the surety that the note would be discounted at the bank instead of by an individual, does not discharge him from liability.

V. No extension of time was given that could discharge the sureties.

1. Bingham's letter to Warner did not propose an extension absolutely, but only contingently.

If the proposition had been assented to, it would not have bound Bingham to accept the extension or to pay the interest for it.

2. Warner's omission to reply did not amount to an acceptance of the proposition.

The letter called for no reply, and announced that the writer was about leaving home.

The proposal was entirely unauthorized, and did not become a contract by the other party disregarding it.

3. Nor was the retention of the enclosed money, under the circumstances, an assent to the proposal.

The collection of the draft was a mere act of prudence to guard against its loss.

And the jury have found that the money was not received as interest in advance, nor applied on the note, nor used by Mr. Warner until the period of the proposed extension had passed. And that he did not agree to extend the time, nor intend to do so ; *Hazard* v. *Allen*, Sup. Ct., Add. Co., Jan. Term, 1859.

How the money was received and disposed of, and with what intent and understanding on the part of Mr. Warner, was a mere question of fact. There was no evidence tending to show that it was received or applied as advance interest, or as the consideration of an agreement to extend, or that any such agreement was made. Mr. Warner (the defendants' witness) swore to the contrary, and no other evidence was given.

4. There was no evidence tending to show that either Fletcher or Warner knew that the defendants were sureties. Both denied it, and no other proof was offered.

Upon every question of fact in the case, the court would have been warranted in directing a verdict for the plaintiff.

POLAND, Ch. J. It may now be regarded as conclusively settled in this State, that a note made for the purpose of raising money, and made payable to a particular person or corporation, and with the expectation that the same will be discounted by the payee, may be taken and discounted by another, and that the person thus advancing the consideration may hold such note as a valid security for the money, even against sureties, and may enforce payment by suit in the name of the payee, unless such payee refuses to allow his name to be used for that purpose. It

is not regarded as a material thing, even as to the sureties, who advances the money or holds the note, as the benefit derived by the receipt of the money, and the obligation incurred for its payment, are precisely the same in the one case as the other. It is unlike many other contracts, where the personal character and qualities of the contracting parties, form a material element in the contract itself, because they may affect its performance or fulfillment. The mere promise to pay money is the same thing to one man as to another, and even if regard might be had to the character of the person to whom a note is executed, it could be wholly frustrated by a transfer to another, which could always be done so as to give to another the absolute control of the debt, even if not negotiable ; *Bank of Burlington* v. *Beach*, 1 Aik. 62 ; *Keith* v. *Goodwin et al.*, 31 Vt. 269 ; *Boardman* v. *Rogers et al.* 17 Vt. 589 ; *Austin* v. *Burchard*, 31 Vt. 589 ; *Bank of Montpelier* v. *Joyner et al., ante* p. 481.

The cases cited by the defendants from Massachusetts and other States where a contrary rule has been held, were all before the court when the later cases above cited were decided, but failed to induce decisions in conformity to them.

The objection made to the want of delivery to the payee is also answered by the above cases, which substantially hold that the party advancing the consideration for the note, becomes the real holder and party in interest, and a delivery to him is a valid delivery of the note.

Upon the discount of these notes by Warner and Fletcher the sum of three hundred dollars was reserved for usurious interest, and so far as the case shows, without the knowledge of the sureties. The defendants claim that these notes are inoperative and void for that reason ; not upon the ground that the general law of the State prohibits the taking interest at a higher rate than six per cent., but that a similar prohibition in the charter of the Bank of Middlebury, upon that institution, has that effect.

This same question was very ably and elaborately argued before the full court at the last general term in *Farmers' Bank* v. *Burchard, ante* p. 346, and probably all the leading authorities were brought to the notice of the court, and upon great considera-

Bank of Middlebury *v.* Bingham et al.

tion it was finally unanimously determined that such prohibition upon a banking institution, contained in its charter, had no other or greater effect upon notes taken by them than the same prohibition has upon natural persons by the general law of the State; that it is not properly a case of a contract beyond the power and scope of their charter, but like all usurious notes, invalid, and not enforcible to the extent that it is usurious and in contravention of the statute. I have examined the opinion of the court in that case drawn up by BARRETT, J., in which all the cases are reviewed, and the question discussed with such fulness and learning as will justify the dismissal of the question here by reference merely to that case.

This decision of that question of course relieves us from the consideration of another which has been discussed in argument, whether Warner and Fletcher could stand in any better light upon the note than the bank could, had the usurious discount been made by the bank itself.

It has not been suggested in the argument that the existence of usury in a note makes the note void, on account of the general prohibition against usury, but it is conceded that the debt and lawful interest may be recovered in an action on the note, and that in ordinary cases such reservation of usury would afford a defence to the surety only to the same extent as to the principal, that is, to have the usurious interest deducted, and see *Richmond* v. *Standclift et al.*, cited below.

All who are conversant with the history of the legislation by which the former law of the State making all usurious contracts and securities void, was repealed, and the present law merely prohibiting the taking of more than six per cent. interest was enacted, know the object and purpose to have been to make such contracts and securities valid, except so far as they were usurious. It has, however, sometimes been suggested that the language used by the legislature was not really appropriate and adequate to that end, and that as the usurious interest was illegal, and in contravention of a positive statute, all contracts infected with it should, upon general legal principles, be declared illegal and void *in toto.*

The real intent and purpose of the law has, however, universally prevailed in its interpretation and administration, and among the multitude of cases which have been before the courts, and found in our reports since this change of the law, where questions of usury have been litigated, we do not find that such a question has ever been made.

In the case of *Rich mond* v. *Standclift et al.*, 14 Vt. 258, which was not long after the change was made, WILLIAMS, Ch. J., in his opinion states the effect of the law to be that the contract can only be avoided to the extent that it is usurious, and so far as we know, such has been the invariable and uniform construction by the courts, profession and people of the State. After so long a practical construction, it is too late now to speculate as to its propriety.

It is further claimed on behalf of those defendants who are sureties on the notes, that Warner and Fletcher were guilty of such a fraudulent concealment in not disclosing to the sureties that they were the real lenders of the money to the principal, and the real payees of the note, as to disable them from enforcing the notes. This question must be considered irrespective of the fact of there being usury included in the notes, for, as before stated, it is not claimed that taking usury on a loan of money is a defence to the surety to any greater extent than to the principal, even where the usurious reservation is unknown to the surety. There might be some plausibility in claiming that in such case the surety should not be holden because the means of the principal to make payment are really just so much less as the amount included for unlawful interest. But a sufficient answer to this is that the liability of the principal and surety both is also lessened to just the same extent as the principal assets are lessened by the unlawful reservation.

If, therefore, these notes had been actually discounted by the Bank of Middlebury, at the same usurious rates they were by Warner and Fletcher, the sureties would have been furnished with no defence except to the usurious portion of them. Upon what principle then can they claim to have been defrauded by not being informed that the notes were really to be discounted by Warner and Fletcher instead of the bank ?

The jury have found that the notes were not made payable to the bank with any design by Warner and Fletcher to deceive or defraud the sureties, and there is nothing in the case to show that they had any knowledge that the sureties were ignorant of the fact that the money was to be obtained of them.

It comes then simply to this question, whether the surety on a note given to raise money, which is discounted by some person other than the payee named in the note, without this fact being made known to the surety, is thereby holden or not. The cases cited before seem to answer this question, or rather this is but the same question in another form. The reason why another than the payee of the note may discount and enforce the note is that it is not material to the obligation itself who is the party who shall enforce it. After this, to hold that the surety is entitled to have it submitted to a jury to say whether he would or would not have signed had he known who was to be the real holder of the note, would be worse than to abrogate the rule itself, for the subject would be thrown open to mere speculation and conjecture. The sureties say here they supposed the notes were payable to the bank, and that prompt payment would be exacted of the principal, and therefore they were willing to sign for him. The next case of the kind that arises, the surety might insist that the payee of the note was a lenient, forbearing man, and he had a right to suppose that punctual payment would not be exacted, and therefore he was willing to be surety for him, but would not to an austere man. To allow such a question to be made at all would involve enquiries into the character, and reputation, and business habits of parties, and of motives, and intents of parties, so utterly hypothetical and fanciful that no certain solution of them could ever be made. Whether A. or B. would be the more likely to exact usurious interest, which would be the forbearing and which the exacting creditor, and which, under all the circumstances, would the surety prefer to become bound to, would all be very fanciful issues. In all the cases which have been cited by the defendants on this point, the surety had either been made to contract for something different from what he understood, or from what appeared upon the face of his contract, or some

fact material to the risk and responsibility of the contract he entered into, was concealed from him.

The leading case of *Pidcock* v. *Bishop*, 10 E. C. L. 197, is a good example of the former class. The defendant became a guarantor for a third person to the plaintiff, to pay for certain iron purchased of the plaintiff. By an agreement between the plaintiff and the principal, the iron was inventoried above the market price, and the difference applied upon an old debt due the plaintiff, and this unknown to the defendant, who thus without his knowledge, was really made to guaranty the plaintiff's former debt against the principal. It was most justly held that he was not bound at all. *Franklin Bank* v. *Cooper*, 36 Maine 179, is a good example of the latter class. The defendant signed a bond to the plaintiffs, to secure the due and faithful performance of duty by their cashier, and the bond was so drawn as to cover a period of time already elapsed. The cashier had already, when the bond was made, been guilty of defaults, which were known to the plaintiffs, but not communicated to the defendant. It was held that the concealment of so important a fact, was a fraud upon the surety, and he was not bound. The very ground upon which Warner and Fletcher are allowed to discount and hold a note made payable to another is, that it is immaterial to the risk of the sureties' contract, by whom the note is discounted.

The sureties also claim, that they were discharged by an extension of time of payment to the principal, in consideration of two hundred dollars as interest on the two notes for three months. By reference to the letter to Warner enclosing the draft for two hundred dollars, it will be seen that A. L. Bingham did not propose a delay for three months absolutely, or offer this two hundred dollars unconditionally, as interest for that period. The letter shows that he expected, or at least hoped to get the money to pay the notes soon, if so, that this sum of two hundred dollars, would apply as a part payment; if he could not get the money to pay the notes, he proposed they should take this sum as interest for three months. Warner received the draft, and converted it into money, but made no application of it, nor does there appear to have been any further communication between them

until after the expiration of the three months, when Warner endorsed the amount as three months interest paid. By the terms of the letter, Warner, if he fully acceded to the proposition contained in it, had no right to make an absolute application of the money as interest for three months, and the principal, or the sureties, had the right to pay the principal as soon as they chose, and if there was no contract for delay that was binding on them, there was none that bound the creditor to grant it, or that tied his hands from collecting the notes. The mere receipt of money cannot be regarded as an acceptance of interest in advance, for it was not so offered; the notes were due, and they had the right to retain the money as a part payment of the debt. The case shows no conclusive acceptance of this sum as interest until the endorsement, which was after the extension had expired. There was no evidence in the case of any agreement for delay whatever, unless it was to be inferred from the acceptance of interest in advance, and if this was clearly proved, a promise to delay for that period probably would be inferred, without evidence of any express promise to delay. The most the defendants could claim from this evidence was to have it submitted to the jury to say, whether there was a receipt of interest in advance, and a contract to delay payment. This was done by the court below, and the jury found there was no such extension of time. We find no error in the trial, and the judgment is affirmed.