BANK OF NEWBURY *v.* S. G. RICHARDS AND DANIEL WEBSTER.

*Promissory Note. Action. Principal and Surety.*

A note made payable to a bank, and executed for the purpose of raising money, may be taken by any person advancing money upon it, and held by him as a valid instrument against the makers, both principal and sureties, enforceable by suit in the name of the bank.

So far as regards the liability of the sureties, there is no greater legal obligation upon the person taking and holding, in good faith, such note under such circumstances, to have it at the bank, to which it is by its terms payable, at its maturity or a reasonable time thereafter, or to notify the sureties that he holds the note, than rests upon the holders of promissory notes generally.

A promissory note, whether negotiable or not, which does not specify any place of payment in terms, is in general payable wherever the person, lawfully holding it, is.

Beyond the obligation of the holder of a promissory note not to contract with the principal for delay in enforcing payment, for a definite period, on sufficient consideration, the only rule of law prescribing duties to the holder of the note, in reference to sureties, is the general one of good faith and fair dealing.

ASSUMPSIT on a promissory note for six hundred dollars, dated August 15th, 1857, payable to the plaintiffs in ninety days after date, and signed by the defendants, and by one Wyman, who was also named as a defendant in the writ, but as to whom the officer serving the writ made a *non est* return.

The defendant Webster pleaded the general issue, and the cause was tried at the January Term, 1861, PECK, J., presiding.

It appeared that the defendant Richards was the principal upon the note, and Webster and Wyman only sureties ; that Richards procured the sureties to sign the note under the expectation on their part that it was to be discounted by the plaintiffs for Richards ; that the signers of the note all resided at Charleston, in this state ; that Richards carried the note, shortly after its execution, to one Morse, of Haverhill, New Hampshire, who discounted the note for him being aware that the defendants

Webster and Wyman were only sureties on the note; that Morse knew where the sureties resided; that about the time the note became due Webster inquired of Richards whether it was outstanding or paid, and Richards told him it was paid; that shortly afterwards Webster wrote to the plaintiffs, inquiring if they had such a note, and immediately received reply that they had not; that shortly afterwards Webster and Wyman caused another similar inquiry to be made of the plaintiffs, and received a reply to the same effect; that the sureties supposed the note was paid, until about the 15th of January, 1859, when Morse carried the note to the plaintiffs, and obtained the consent of the plaintiffs to aid him in the collection of the note, and that the plaintiffs' cashier at that time, by Morse's request, wrote the defendant, Webster, that they had the note, and requested him to pay it.

It further appeared that Richards continued to reside at Charleston, and was in good credit, and paid his debts until December, 1858, when he absconded, leaving no property behind him; that from the date of the note up to the time of his absconding, the note might have been collected of him, and that if the sureties on the note had, at any time after its maturity, known it was outstanding, they could and would have caused it to be collected out of Richards, or would have paid it themselves and collected the amount so paid out of Richards.

It also appeared that the present suit was prosecuted by Morse, with the consent of the plaintiffs, but for his (Morse's) sole benefit.

The court also found as a fact that the sureties used due diligence to learn whether the note was paid, and whether it was outstanding, and that the loss to Morse or to the sureties, as the case might be, in consequence of its non-payment by Richards, was occasioned by Morse's neglect to cause the note to be at the bank of Newbury when it fell due, or in any reasonable time thereafter, or to notify the sureties that he held it, or that it was not paid.

Upon all these facts the county court rendered judgment for the defendant Webster, to which the plaintiffs excepted.

Bank of Newbury *v.* Richards et al.

*William Hebard* and *A. Underwood*, for the plaintiffs.

*C. W. Clarke*, for the defendant Webster.

BARRETT, J. Under several successive decisions in this state, beginning with the *Bank of Burlington* v. *Beach*, 1 Aik. 62, and ending with the *Bank of Middlebury* v. *Bingham et al.*, 33 Vt. 621, in which the decisions of the courts of other states, on the same subject, have been fully considered, it must now be regarded as settled, that Morse could advance the money upon this note, and receive and hold it as a valid instrument against the makers thereof, enforceable by suit in the name of the bank, unless precluded by some act or default on his part, as the holder.

As he did advance the money and take the note therefor, the question is, whether the liability of the sureties has been discharged, by reason of his acts or omissions in respect to the note.

The decision of the county court seems to have been made on the ground, that he did not have the note at the bank at the time it fell due, or in a reasonable time thereafter; nor notify the sureties that he was the owner and holder of the note, so that they might be able to know where it could be found, seasonably to take measures to secure themselves for their liability upon it.

As the case does not show any want of good faith towards the sureties, in the course taken by Morse with the note, the material point rests in the question, whether he has violated, or neglected, any duty which the law imposed on him towards the sureties, whereby they have suffered prejudice.

As to the alleged duty, (as one branch of the alternative above stated,) to have the note in the bank at or soon after the time it became payable:—The note does not specify any place of payment in terms. The ground on which it is claimed that the note should have been in the bank, at or near its maturity, is, that it being payable to the bank, and not made negotiable, the law will hold the place of payment to be at the bank, the same as if it had been so specifically made payable there.

As a general rule, when no place of payment is named, a note,

payable to an *individual person*, whether negotiable or not, is payable wherever it may be in lawful custody. We know of no principle or decision that would make the rule different in case of a note payable to *a bank*, or any other *corporation*. If this note had been payable to John Doe, or any other individual, there would be no question, that Mr. Morse might have received the note upon a lawful transacton, and held it in the manner that he held this note, and it would have been payable, not at the house or office, or the personal *locus in quo*, of John Doe, but at any place where Morse might be with it, at any time after it fell due. As Morse was, in the case before us, equally in the lawful custody of the note payable to the bank of Newbury, we think it stands upon the same ground, as to place of payment, and therefore, so far as place of payment is concerned, there was no legal necessity for him to have the note at the bank, at the time, and in the manner claimed.

As to the duty to give notice that Morse owned or held the note :—The point in this respect must stand, if at all, upon the ground of a *legal duty*, as before remarked. In reference to parties sustaining certain relations to bills and notes, as drawer, or endorser, or guarantor, the law, for good reasons, has established certain rules, that must be observed, in order to fix liabilities upon such parties. But in reference to sureties, we do not understand that those rules are applicable. A surety is an original maker, and becomes primarily and absolutely liable, as much so as the principal, to any party lawfully holding the paper. With a very obscure logic, and an obvious departure from the analogies in the common application of established principles in the law, it may be, that, in regard to sureties, there has been established an arbitrary and technical rule, viz.: that if the holder contracts with the principal for delay in enforcing payment, for a definite period, on sufficient consideration, he thereby will discharge the surety from liability, without enquiry whether the surety has been in fact put to any peril of detriment thereby.

But beyond this, we understand that the only rule of law, prescribing duties to the holder of the note, in reference to sureties, is the general one of good faith and fair dealing.

Bank of Newbury *v.* Richards et al.

And when the facts and circumstances of the given case do not charge him with any want of these, the sureties stand on no ground of advantage over the principal, in respect to immunity from liability. The court below have not reported any finding of a want in this respect; nor do the facts, which are found, constituting the history of the note and of the parties, in their relation to it, betoken any want of such good faith and fair dealing.

Indeed, it seems clearly to be a case, in which both Morse and the sureties had, and had reason to have, entire confidence in Richards, both as to honesty, and as to ability to pay this, and all his other debts. In the absence of any thing found, or indicating that Morse suspected, or had any reason to suspect, any design on the part of Richards to play false with his sureties, or that they were in any peril as such sureties, there is no ground for predicating any want of good faith and fair dealing on the part of Morse towards them.

This being so, we know of no rule or reason, why he might not let the note lie, without notifying, or calling upon, the sureties, for such time as he saw fit. It being settled law that this note might go into the hands of any body else, as well as the bank, as a means of raising money, and be held as a valid and enforceable instrument against the makers thereof, it must be supposed that the sureties signed it in view of the legal consequences, both to the holder and themselves. They signed it reposing full confidence in the principal, as before remarked, both for honesty and ability to pay. Because that confidence was misplaced, and they were misled by the falsehood of Richards, as to having paid and taken up the note, the results thereof can not be visited upon Morse, who was holding the note in lawful right, and neglecting no duty towards them, which either the law or good morals imposed.

The judgment is reversed; and, as is the practice in cases in which all the facts are found and reported, we proceed in this court to render such judgment as the law requires, judgment is rendered here for the plaintiff to recover the amount due on the note, with costs.