FARMERS AND MECHANICS' BANK *v.* H. G. HUMPHREY AND CYRUS ALLEN.*

*Promissory Note. Principal and Surety. Right of Holder to sue in name of Payee.*

H. was principal on a note, payable to the Farmers and Mechanics' Bank, in twenty days from date, and A. was his surety. When A. signed the note, it was agreed between him and H. that before it should be used H. should procure it to be signed by N. a responsible person, as co-surety, and that the note should be used at the bank to which it was made payable, "and not otherwise." H., in violation of the agreement sold and delivered the note to W., who advanced to H. the full amount of it in cash, acting in good faith and without notice of the agreement between A. and H. *Held*, that this agreement in respect to obtaining another surety, and to the use which H. should make of the note, did not vary or affect the right which W. acquired by the purchase of the note, and that W. might maintain a suit in the name of the bank as plaintiff against H. and A. for the recovery of the amount of the note, without and even against the consent of the bank.

But in such case, on application of the nominal plaintiff, an indemnity against costs would be required to be given, and in default thereof the proceedings might be stayed or set aside.

ASSUMPSIT on a promissory note, dated June 13th, 1859, for $200., signed by the defendants, and payable to the plaintiff twenty days after date. Trial by the court, April Term, 1861, PIERPOINT, J., presiding.

From the evidence adduced on trial, the court found the following facts:

That Allen was surety for Humphrey on the note, and never had any benefit from, nor security in respect thereto. That at its date Humphrey applied to Allen to sign the note with him to the bank, and that Allen signed the note upon the express condition that before it should be used Humphrey should also get it signed by one Noble, a responsible person, as surety, and that the note should be used at the bank and not otherwise. It was a rule of the bank, at that time, though exceptions were sometimes made to it (in the discretion of the board of directors,) that paper for discount should be signed by three persons, and this rule was known

*This case was argued at the January Term, 1863, and held under consideration until the present term.

to and relied upon by Allen in signing the note and leaving it in the hands of Humphrey, for obtaining the signature of Noble.

Humphrey, thereupon, wrongfully sold and delivered the note to one Silas Whitcomb, and obtained from Whitcomb, the amount of the face of the note in cash ; Whitcomb acting in good faith, having no notice or suspicion in fact, though knowing Allen to be a surety, that Humphrey had no right to use the note or deliver it to any one but the bank, other than what may be legally implied from the tenor of the note itself.

At the time of procuring Allen's signature, and from thence until the day before this suit was brought, Humphrey was in good credit, and had attachable property in his possession sufficient to pay the note.

Immediately after the note became due, Allen having heard that Humphrey was likely to fail, applied to Humphrey and asked if the note was paid, and Humphrey replied that it was, which statement Allen believed and acted upon, and made no inquiry as to the note at the bank, and he believed the note had been signed and used in pursuance of his agreement with Humphrey, and that it had been taken up by Humphrey at its maturity, and had no knowledge to the contrary until he was sued. The note was held by Whitcomb without taking any steps or giving any notice to Allen or the bank in respect thereto, until after the failure of Humphrey, when he, without any authority from the bank, commenced this suit in the name of the bank thereon.

The bank never had any interest in or possession of the note, nor had it any knowledge of the same, except that on the day after this suit was brought, the plaintiff's attorney informed the president of the bank, who was also a director, that such a suit had been commenced, and asked leave to prosecute it in the name of the bank, saying that Whitcomb was willing to secure the bank satisfactorily against costs, to which the president replied that the bank would have no objection to the suit going on in its name, and that no security was desired by the bank. But two months after this interview, and before the suit was entered in court, the matter came to the knowledge of the board of directors, who thereupon, adopted a resolution wholly refusing to

allow the suit to stand or be prosecuted in its name, which fact was made known to Whitcomb's attorney, and brought to the notice of the court at the term at which the suit was entered, and said resolution of the board of directors has ever since stood in force, though at said term Whitcomb again proposed to the attorney, he being one of the directors of the bank, to furnish any proper security against costs.

During all this time the affairs of the bank were managed by a board of seven directors, a majority of whom was necessary to constitute a quorum for the transaction of business, and it did not appear that the president had any authority to bind the bank in any way other than what the term president, and his being one of the directors, imports.

No security was obtained in the suit upon any property of Humphrey, and he has since been and still is, insolvent.

Upon these facts the court, *pro forma*, rendered judgment for the amount of the note against both Humphrey and Allen,—to which decision Allen excepted.

*George F. Edmunds*, for the defendent, Allen, maintained that this case is distinguished from the cases *Keith* v. *Goodwin*, 31 Vt. 268 ; *Bank of Middlebury* v.*Bingham et al.*, 33 Vt.621 ; *Bank of Montpelier* v. *Joyner, ib.* 481 ; in the fact that in these cases the notes were complete when signed ; and claimed that the utmost extent to which the court had gone was to adopt the rule that the *payee to whom the 'express promise of the defendant is made*, has a right, acting in good faith, to believe from the face of the paper, *addressed to him*, that the defendant intended it should *be so delivered. Passumpsic Bank* v. *Goss*, 31 Vt. 315 ; *Dixon* v. *Dixon et al., ib.* 150. In this case the note was not negotiable. It imported on its face no authority to deliver it to Whitcomb. He must stand, therefore, upon the *real* authority, which fails altogether. Not being regarded in the law as the payee, Whitcomb could not advance money upon it to the injury of the surety.

*E. R. Hard*, for the plaintiff, maintained that Humphrey clothed Allen with apparent authority to sell and negotiate the note while current to any one who should receive it in good

faith, and cited *Bank of Chenango* v. *Hyde*, 4 Cow. 567 ; *Bank of Rutland* v. *Buck*, 5 Wend. 66 ; *Powell* v. *Waters*, 17 Johns. 176 ; *Elliott* v. *Abbott*, 2 N. H. 549 ; *Cross* v. *Rowe*, 2 Foster 77 ; *Hunt* v. *Aldrich*, 7 *ib.* 31 ; *Bank of Newbury* v. *Rand*, 38 N. H. 166 ; *Bank of Burlington* v. *Beach*, 1 Aik. 62 ; *Bank of Middlebury* v. *Bingham et al.*, 33 Vt. 621 ; *Keith* v. *Goodwin*, 31 Vt. 268 ; *Austin* v. *Birchard*, *ib.* 589 ; 5 U. S. Dig. 652 and 1,157.

KELLOGG, J. In several recent cases, it has been settled by this court that a promissory note made for the purpose of raising money, or of being exchanged for money, though made payable to a particular person or corporation, and with the expectation that it will be discounted by the payee, may be discounted by any other person, and that the party who advances the consideration may hold the note as a valid security for the money, even against sureties, and may use the name of the payee to enforce payment by suit, by the payee's consent, either express or implied. *Keith* v. *Goodwin*, 31 Vt. 268 ; *Bank of Montpelier* v. *Joyner et al.*, 33 Vt. 481 ; *Bank of Middlebury* v. *Bingham et al.*, 33 Vt. 621 ; *Bank of Newbury* v. *Richards et al.*, 35 Vt. 281. These cases were decided upon a full discussion and consideration of the rule of decision adopted by the court, and the rule itself is quite as firmly established as any legal principle connected with the law of the subject.

Humphrey was the principal in the note in the present case, and Allen was his surety. When Allen signed the note, it was agreed between him and Humphrey, that before it should be used, Humphrey should procure it to be signed by one Noble, a responsible person, as co-surety, and that the note should be used at the bank to which it was made payable, " and not otherwise." Humphrey in violation of this agreement, sold and delivered the note to Silas Whitcomb, who advanced to Humphrey the full amount of it in cash, acting in entire good faith and without any notice of the agreement between Allen and Humphrey. Does this agreement in respect to obtaining another surety and to the use which Humphrey should make of the note, vary or affect the rights which Whitcomb acquired by

the purchase of the note? The note upon its face was complete and perfect, and it was in the hands of a party who was apparently entitled to deal with it, and its tenor, coupled with his possession of it, fairly imported that it was made for the purpose of being exchanged for money. If Humphrey had taken the note to the bank, and it had been there discounted, it would have been no defence to Allen that Humphrey had agreed with him not to use the note without procuring another surety upon it, unless the officers or directors of the bank had notice of the agreement at the time of discounting it.

This was expressly held in the case of the *Passumpsic Bank* v. *Goss*, 31 Vt. 315, and that case illustrates a well known legal principle that where one of two innocent parties must suffer by the fraud of a third person, he who by trusting such third person, enabled him to perpetrate the fraud must bear the loss. If the note was on its face a complete and perfected instrument, Whitcomb would, in the absence of any notice or information of the agreement between Humphrey and Allen, have had the same right to purchase this note of Humphrey that he would have had to purchase it of the bank if it had been discounted for Humphrey by the bank. If Whitcomb exchanged his money for the note in good faith, his equities would be precisely the same whether he made the exchange with Humphrey or with the bank, and the apparent object for which the note was executed would be secured by the exchange with whomsoever it might be made. It could make no difference to Allen, as a surety on the note, whether the note should be discounted by Whitcomb in the first instance, or be discounted by the bank and then transferred by the bank to Whitcomb for value. If the note was purchased by Whitcomb for a full consideration and in good faith, while current, we think that he is entitled to enforce every legal right arising upon it which the bank could have asserted if it had discounted the note under the same conditions. He thereby became the real holder and party in interest, and the delivery of the note to him was an effectual delivery of it as well against the surety as against the principal. *Bank of Middlebury* v. *Bingham et al.*, 33 Vt. 634; *Bank of Newbury* v. *Richards et al.*, 35 Vt. 281.

It is claimed by the surety that even if this note should be

considered as perfected and completed for use when it was pur-chased by Whitcomb, no action could be maintained to enforce payment upon it without the consent of the bank. It is con-ceded, in making this objection, that with such consent the action is maintainable ; and some expressions used in cases decided in this court seem to imply that such consent, either express or implied, is necessary. *Bank of Burlington* v. *Beach*, 1 Aik. 62 ; *Bank of Middlebury* v. *Bingham et al.*, 33 Vt. 633. But the liability of the makers of the note accrued on its purchase by Whitcomb, and on the delivery of the note to him, and it is not dependent upon the subsequent assent of the bank. If there was any foundation for this objection, it could be set up to defeat the action as well by Humphrey as by Allen ; but we do not think that either are entitled to raise any question of this character. It is a familiar rule of practice that an assignee of a debt may bring an action for it in the assignor's name, even against his consent and without his knowledge, if such use of his name is necessary to enforce payment of the debt. And yet, on his application, an indemnity against costs would be required, or the proceedings might be set aside or stayed. Where an attor-ney brought an action for a wife in her husband's name, for a trespass in entering her house and taking her goods (she living apart from her husband), without authority from the latter, the court refused to stay the proceedings, although the husband joined the defendant in the application, (*Chambers* v. *Donaldson*, 9 East, 471) ; but the proceedings in such a case would be ordered to be stayed until an indemnity against costs, to the satisfaction of the court, was given to the husband. (*Morgan and wife* v. *Thomas*, 2 C. & M. 388.) So where a *cestui que trust* brings an action in the name of his trustee, or in the case of joint tenants or joint contractors, or in other cases where a person is obliged to use another's name in an action, the proceedings will not be stayed upon the application of the trustee, &c., excepting temporarily, until he be indemnified against costs. But where the interference of the court would prejudice the real party in interest, they may decline to interfere, especially where the attorney who prose-cutes the action is a responsible person. 1 Chitty's Archb. Pr.

(9th Ed.) 74 ; 2 *ib*. 1300–1301.   The note upon which this suit was brought, not being negotiable, could be sued only in the name of the bank ; and we regard the real holder of that note as having the right to make use of the name of the bank in any necessary suit upon it.   The right of the bank to interfere by refusing its assent to the prosecution of the suit in its name, ought not to be recognized except upon the ground of some possible liability for costs arising from the suit against which an indemnity ought to be provided ; but the bank in this case seeks for no indemnity against costs, and the refusal of its consent to the prosecution of this suit in its name must be presumed to rest upon other reasons.   If under existing circumstances this question could not be raised by the bank, there is still less reason for its consideration when raised by the defendants.   It could not be claimed that, if the bank had originally discounted this note and then sold it to Whitcomb, it could refuse the use of its name in a suit upon the note, if such a suit became necessary ; and we do not see how the case is varied by the use of the name of the bank in this note without its knowledge.   If Whitcomb had a right to purchase the note, we find no difficulty in conceding to him the right to use the name of the bank to enforce all the legal remedies upon it to which the bank itself would have been entitled if it had originally discounted the note.

Judgment of the county court for the plaintiff affirmed.