### ROSWELL R. KEITH v. MAJOR L. GOODWIN.

*Promissory note.    Bank.    Principal and surety.    Guaranty.*

If a note be executed for the purpose of raising money and be made payable to a bank, and be discounted by the cashier of that bank on his private account, and afterwards be transferred before maturity by him, with his indorsement in the name of the bank as cashier thereon, this constitutes a sufficient recognition of the note by the bank to render it binding upon all the parties to it, whether principals or sureties.

The fact that a note, executed for the purpose of raising money, is made payable to a particular bank or individual, is merely a formal, and not a substantial part of the contract.   In such cases it is well understood that the note goes into the market as money, and in exchange for money, to any party who will make the discount.   REDFIELD, Ch. J.

If one sign a note as surety, and entrust it to his principal, he thereby gives the latter an implied authority to obtain either additional sureties or guarantors, indefinitely, until the note is fairly launched in the market as a security, having two distinct parties.

One who signs as surety may so stipulate, at the time of entering into the obligation, as not to be liable to contribution with other sureties who have

Keith *v.* Goodwin.

signed before him. And when one *guarantees* the payment of a note, on which sureties have already signed, it seems that *prima facie* his legal relation to those who have signed before him is such that he is surety *for them jointly*, not jointly *with* them.

The defendant signed a joint and several promissory note with others, upon which, though he appeared as one of the principals, he was in fact a surety. Afterwards, at the request of one of the principals, and for the purpose of assisting them in raising money upon the note, the plaintiff, not knowing that the defendant was a surety, guaranteed the payment of the note, and eventually was obliged to pay it. *Held*, that in the absence of proof that he signed the guaranty as a general surety, and with the intention of being liable to contribution with the other sureties, the plaintiff was entitled to recover of the defendant the whole amount paid by him.

The case of *Flint* v. *Day*, 9 Vt. 345, questioned.

ASSUMPSIT upon a promissory note of the following tenor :
" $300. MONTPELIER, September 3, 1850.
Two years from date we jointly and severally promise to pay the Vermont Bank, or order, three hundred dollars, with interest annually, for value received. (Signed)

V. B. BURRIS, GILMAN B. DODGE,
BENJAMIN F. BURRIS, MAJOR L. GOODWIN,
WM. H. PARKER, WM. DODGE,
BENJAMIN BURRIS,

upon which note was the following guaranty:
" For value received we guaranty the payment of the above note. (Signed)

SEYMOUR STONE, E. S. CAMP.
S. V. KIMBALL, W. N. PECK,
EBEN BICKFORD, ROSWELL R. KEITH.

The note was indorsed as follows :
" Without recourse to the bank. J. A. PAGE, Cashier.
WM. B. HUBBARD."

The declaration also contained the common money counts in assumpsit.

Plea, non assumpsit, and trial by jury, at the March Term, 1858, of the Washington County Court,—BARRETT, J., presiding.

On trial the plaintiff gave in evidence the above described note and guaranty, and proved that at the date and execution thereof,

there existed and was doing business in Montpelier, a company, in the nature of a partnership, under the style of "the Montpelier Boot and Shoe Company;" that for the purpose of raising money for use in the business of this company, the note in question was procured to be made by some of the members thereof; that the plaintiff, signed the guaranty upon the note at the request of some of the members of the company, after it had been executed by the several signers of the note, and that he supposed at the time that all the signers of the note were members of the company and principals on the note as between themselves; that Gilman B. Dodge, one of this company, raised money on the note by selling it, before maturity, to J. A. Page, then and ever since the cashier of the Vermont Bank, on his, Page's, own account; that the bank never had any interest in it; that before the note matured Page sold it to Wm. B. Hubbard, and indorsed it in the manner above described; that after the note matured, Hubbard called on the plaintiff to pay it, which the plaintiff did, and Hubbard thereupon indorsed the note and delivered it to the plaintiff.

The defendant proved that he never was a member of said company, and never represented himself, or acted as such; that this company was formed by a written constitution, subscribed by the various members; that he signed the note in question merely as a surety, at the request of Parker, one of the members of the company; that when he signed the note he had no knowledge that the plaintiff or any of the other signers of the guaranty, were relied on to assist in raising money upon the note, or that any guaranty was to be obtained thereon; that he had no knowledge until after this suit was brought, what course had been pursued with the note after he signed it, but supposed that it had long before been paid by said company.

Upon these facts the court directed a verdict for the defendant, to which the plaintiff excepted.

*Peck & Colby.* for the plaintiff.

The ruling of the court was clearly erroneous on two grounds.

1. The plaintiff can not be regarded as a maker of the note in any sense. His undertaking was collateral. He engaged that

the makers should pay the note, and if they did not, that he would. He was a mere guarantor, and only liable in case the makers failed to pay. His promise was collateral to that of each and all of the makers. He was a surety for all of them; as to him they were all principals; *Longley* v. *Griggs*, 10 Pick. 121; *Wilson* v, *Foot*, 11 Metcalf 285; *Oxford Bank* v. *Haynes*, 8 Pick. 423; *Craythorne* v. *Swinburne*, 14 Vesey Ch. 159.

2. If, however, the plaintiff and the defendant are to be regarded as co-sureties, the plaintiff, having paid the whole debt, is entitled to recover the defendant's proportion of the amount paid. This liability is imposed by the principle of contribution which exists between sureties. It does not depend upon any privity of contracts between sureties. It is not necessary that there should be any. It exists independent of it, and grows out of their position as sureties; *Dering* v. *Earl of Winchelsea*, 2 B. & P. 270; *Norton* v. *Coons*, 3 Denio 130; White & Tudor's Lead. Cases in Equity (note) 95; *Tobias* v. *Rogers*, 3 Kernan 59.

3. The fact that the note was not discounted by the bank, does not affect the validity of the note. It was executed to raise money for the boot company, and the object was accomplished; *Bank of Burlington* v. *Beach*, 1 Aik. 62; *Bank of Chenango* v. *Hyde*, 4 Cowen 567; *Bank of Rutland* v. *Buck*, 5 Wendell 66; *Powell* v. *Waters*, 17 Johns. 176.

*Heaton & Reed* and *O. H. Smith*, for the defendant.

1. The note was never a valid note or contract between this defendant and the bank. The bank never was a party to it. It only became a note as to any persons when Gilman Dodge sold it to Page; *Adams Bank* v. *Jones*, 16 Pick. 574–8–9; *Marvin* v. *McCullum*, 20 Johns. 288; *Woodford and Wife* v. *Dorwin*, 3 Vt. 82; and if there was no note between the defendant and the bank, there was no note or contract to indorse or transfer.

2. All the character the defendant assumed was that of surety to his co-signers, and as maker to the payee or a regular indorsee. And the defendant, by this, his contract, holds no relation to the plaintiff, and that contract can not be changed by others; *Miller* v. *Stewart*, 9 Wheat. 680, 702, 703; *Bonar* v. *McDonald*, 1 Law & Eq. 1–8; *Evans* v. *Whyle*, 15 E. C. L. 514; (5 Bingham

485); *Gardner* v. *Walsh*, 32 Law & Eq. 162; *Knight* v. *Gorham*, 4 Greenl. 492.

3. This note was signed by the surety for discount at the bank, and without his consent it could be put to no other use, retaining his liability; *Manufacturer's Bank* v. *Cole*, 39 Maine 188; *Clinton Bank* v. *Ayres*, 16 Ohio 282; 6 Ohio 246; *Riley* v. *Johnson*, 8 Ohio 528; 16 Pick, 574, *supra;* *Allen* v. *Ayer*, 3 Pick. 298; *Prescott* v. *Brinsley*, 6 Cush. 234.

4. The plaintiff's guaranty was directed to the bank, and must be wholly inoperative until there becomes a debt due the bank. No other person could advance money on the note and have a claim on the guarantor; Parsons on Contracts, 493; *True* v. *Fuller*, 21 Pick. 140; *Tyler* v. *Binney*, 7 Mass. 479; *Lamorieux* v. *Hewett*, 5 Wend. 307; *Myers* v. *Edge*, 7 Term 254; *Grant* v. *Naylor*, 4 Cranch 224; *Bleeker* v. *Hyde*, 3 McLean 279; *Russell* v. *Perkins*, 1 Mason 368; Story on Prom. Notes, sec. 608; 10 Johns. 479; 16 *id.* 99; 4 *id.* 475.

The guaranty was not negotiable, even as a letter of credit; *Walsh* v. *Bailey*, 10 Johns. 180.

The plaintiff, then, is to be regarded as a mere volunteer, a stranger. He paid a note which he was under no legal obligation to pay. He can not thus compel the defendant to become the plaintiff's debtor.

REDFIELD, Ch. J. The note in question was executed by the members of a partnership or joint stock company, and by this defendant as surety for them, by their procurement. One of the principals then procured the plaintiff and others to guaranty the payment of the note. The fact that the defendant was surety did not appear upon the face of the note, nor was it known to the plaintiff at the time he made the guaranty. The note was made payable to the Vermont Bank, and was procured to be executed and the guaranty to be made, for the purpose of raising money upon it at that bank, it would seem. John A. Page, the cashier of that bank, on his own account discounted the note while it was still current, and subsequently, but before it became due, sold and indorsed it, in the name of the bank, to one Hubbard, who after it fell due called upon the plaintiff for pay-

ment, and he paid it, taking Hubbard's indorsement upon the note.

The plaintiff now seeks to recover the whole amount of the note of the defendant, as a joint maker or principal in the note, and if not in that capacity, then, as co-surety, to recover of him his proportion of the amount paid. The defendant had no knowledge that any one was expected to guaranty, or that any one did guaranty the payment of the note, or that the note was put in circulation, or if so, that it had not been paid, until called upon by the plaintiff to pay it.

I. It is objected that the note was never discounted in the manner contemplated at the time of its execution, and that therefore the defendant never became liable upon the note.

We think the fact that this note was discounted by the cashier of the bank where it was made payable, and by him indorsed as the cashier, in the name of the bank, must be regarded as a sufficient recognition or adoption of the note by the bank, to render it binding upon all the parties to the contract, within the decisions in this State. This very point is, in effect, decided in *Bank of Burlington* v. *Beach*, 1 Aik. 62. The doctrine of this case has been repeatedly recognized in this court, and never questioned. The same rule prevails in the State of New York; *Bank of Chenango* v. *Hyde*, 4 Cowen 567; *Bank of Rutland* v. *Buck*, 5 Wendell 66. This last case is where the note was procured, and made payable to the Bank of Rutland, for the purpose of raising money to pay upon an execution. The bank refusing to make the discount, the note was received substantially in payment upon the execution, and by consent of the bank was sued in their name for the benefit of the officer. And precisely the same point was decided by this court, not many years since, in the county of Orleans. We can not think, therefore, that the present case can be regarded as carrying the rule beyond where it has already been carried. And there is nothing in the principle of these decisions which does not commend itself to our sense of justice and propriety.

We are aware that a different rule, to some extent, prevails in the States of Massachusetts, Maine and Ohio, as the cases referred to in the argument show. But we think the rule adopted in this State, *Bank of Burlington* v. *Beach*, *supra*, and which has

19

been so long acted upon here, far better calculated to subserve the ends of justice and fair dealing, than that which denies the recovery upon that ground.

When a note is executed for the purpose of raising money in the market, although made payable to a particular bank or firm, it is well understood that this is generally regarded by business men as rather a formal than a substantial part of the note. If the note were made payable at a particular bank, to the order of the makers, it would be much the same thing. So too if made payable to bearer generally. The name of the person to whom the note is payable is mere form. It is understood that it is going into the market as money, and in exchange for money, to any party who will make the discount. If negotiated at the bank, it may pass into other hands the next hour. And there is no claim that this will have any tendency to release the sureties. We think there is no difficulty with the case upon this point.

II. In regard to the right of the plaintiff as against the defendant, upon the note, we think the law is settled beyond all question, that he is, at all events, to be treated as a co-surety with the defendant, if not also as a surety for the defendant as a joint maker and principal in the note, so far as he is concerned.

As to the objection founded upon the case of *Gardner* v. *Walsh*, 32 Eng. Law & Eq. 162, that the guaranty was such an alteration of the note, being done without the consent of the defendant, as will avoid the note, we can not regard this as coming fairly within the principle of that case. That case is not parallel with the present. There the decision goes upon the ground that after a note becomes effectual as a contract by delivery, it is not competent for the holder, without the consent of the makers, to procure an additional signer; that this is a material alteration and avoids the contract, whether it operates favorably or unfavorably to the other signers. Whether the decision to this extent is sound or not (and we do not intend to question that case), we think the rule thus laid down could have no application to a case like the present. Here the note was signed by the defendant, as a joint principal and entrusted to his associates, and if he had signed as surety upon the face of the note, and entrusted it to his principals, the rule would have been the same. He thereby gives those

to whom he intrusts the note an implied authority to obtain either additional sureties, as joint makers, or guarantors, indefinitely, until the note is fairly launched in the market as a security, having two distinct parties. Before that it is merely inchoate, and it is clear that the procuring of additional signers, guarantors or indorsers, comes fairly within the implication of authority given the party to whom the defendant's signature is entrusted, and which at that time, so far as additional signers are concerned, is to be regarded as merely blank, or in one sense, as an authority to use the credit of the party, either alone or with others, in the form in which he has signed. But the idea that no other indorsement or guaranty is to be procured, and that if the note will not go in that form it is not to be used unless all the parties consent to the introduction of other parties, is certainly contrary to the understanding of commercial men, which is the law of such cases, and the only just basis of the implied contract resulting from the facts.

It being now well settled by the case of *Dering* v. *The Earl of Winchelsea*, 2 B. & P. 270, that a surety, although signing another instrument guarantying the same debt, must be regarded as a co-surety with all the sureties to the original contract, there would seem to be no question of the right of the plaintiff to claim a remedy to that extent against the defendant, even if he had, at the time of making the guaranty, known the defendant to have been a mere surety. This point was decided by this court in *Flint* v. *Day*, 9 Vt. 345. See also *Norton* v. *Coons*, 3 Denio 130; *Barry* v. *Ransom*, 2 Kernan 462; *Tobias* v. *Rogers*, 3 Kernan 59; *Craythorne* v. *Swinburne*, 14 Vesey 160; *Dering* v. *Earl of Winchelsea*, 1 White & Tudor's Lead. Cases in Eq. 60, and notes, English and American, where the subject is elaborately examined, and the cases fully presented and accurately digested.

III. But it seems to a majority of the court that the plaintiff is equitably entitled to treat the defendant as he held himself out upon the contract, *i. e.* as principal. There was nothing to intimate that the signers were anything but joint principals. And the defendant having so signed the note and entrusted it to the others, with authority to obtain additional signers, or guarantors, it was giving them authority to represent the defendant as a co-

principal; and by presenting the note merely, and asking a guaranty of the plaintiff, a virtual representation was made that the defendant stood as joint principal. The case may well be supposed of the defendant being the only responsible signer, and the guaranty being made wholly upon his credit. If he could afterwards be allowed to falsify this representation, thus held out upon the face of the paper, it might certainly work great injustice to the guarantor.

But this is a question depending mainly upon authority, we are aware, and should be decided upon the settled principles deducible from the adjudged cases.

It is admitted by all the writers upon this subject, and in all the cases where the question has arisen, and by all the judges, without exception, who have had occasion to speak of the point incidentally, that any one who is not in fact a joint or sole principal in a contract, but who binds himself for its fulfilment as a surety merely, may so stipulate at the time of entering into the obligation, as not to be liable to contribution with the other sureties who have signed before him. And the form of doing this is not important. Nor is it important that this should appear upon the contract. And where one signs as surety, after other sureties have signed and without privity with them, it is not important that they should be made aware of the terms upon which subsequent sureties become holden. If the subsequent sureties become bound for the performance of the very same thing as the former ones, and especially by the same contract, the right of contribution is created in favor of the former sureties, unless there is some stipulation to the contrary. It is upon this ground that the action for contribution was maintained in *Flint* v. *Day*, *supra*, against Mr. Day, who stood much in the relation of the plaintiff here, the note being paid by the prior sureties, and the suit brought to compel contribution of the last surety signing, but who signed on the back of the note in blank; and the court held that he thereby became a joint maker, and liable to contribution with the other sureties. But even that case, upon its facts, is more doubtful than it was then regarded by the court. The later cases do not fully support it.

But where there is anything in the form of the contract or the

nature of the transaction, to show that the subsequent sureties did not expect to be holden as co-sureties with the others, but to stand merely as sureties for all the former signers, they are entitled to full indemnity from each of the others, or all jointly. As if the surety sign expressly as surety for all the above signers, · or when he signs, saying he is willing to be responsible for all of them. In such case he is not liable to contribution; 1 Story's Eq. Jur. § 498; Chitty on Con. 598; Lead. Cases in Eq. (68) and notes; *Pendebury* v. *Walker*, 4 Y. & C. 424; *Moore* v. *Isley*, 2 Dev. & Bat. 372.

This very point is expressly decided in *Craythorne* v. *Swinburne*, 14 Vesey 160.

The facts of this last case seem to us very analogous to those of the present case, so far as the liability of the plaintiff to share the burden of paying this note, with the defendant, is concerned. In that case, as well as in this, the undertaking of the last surety was without the knowledge, expectation or privity of the former ones; it was done too, in both cases, to induce the advance of money upon the first contract, and because it could not be obtained without such additional indemnity or guaranty. And in the case of *Craythorne* v. *Swinburne*, it was clearly held that there was no duty of contribution among the two classes of sureties. It is held that in the case of *Craythorne* v. *Swinburne*, the indemnity was by a separate instrument, and here it is upon the same paper, but by a distinct contract, referring to the other for brevity, as written above. We can not suppose it could have made any difference in the present case if the plaintiff had given his guaranty upon a separate piece of paper, writing the note or describing it, instead of referring to it as written above. In the case of *Craythorne* v. *Swinburne*, the question was determined upon the circumstances and oral evidence in the case as matter of fact, and made dependent upon the intention of the last surety. The same question might here very properly have been submitted to the jury, if there really is any conflict in the evidence, or if there should be hereafter, it might be proper to have the finding of the jury upon this point.

But so far as the testimony is developed in the bill of exceptions, it seems to be all in one direction.

1. The form of the plaintiff's guaranty shows that he merely undertook for the solvency of all the primary signers of the note.

2. The manner of executing the note, the purpose of obtaining the guaranty, as well as the form of it, all look in the same direction. And unless the defendant can satisfy the jury that at the time the plaintiff signed the guaranty, he really expected to stand merely as a general surety, we think he is bound to indemnify him, as much so as if he had signed at his request, and upon his express assurance that he would see him harmless. As matter of fact, or implication from facts, we can not but regard the consideration that the plaintiff's contract was in the form of a guaranty, as of some significance. The word guaranty in strictness may not import more than a promise or undertaking. But in commercial circles, and among business men generally, the term is understood in a more specific sense. A guarantor is not a maker or indorser, but one who is understood to assume more the obligation of an indorser than of a maker. Both the indorser and guarantor are understood to undertake for the maker, and as an aid to his undertaking. And originally the guaranty was understood to be operative only upon condition of the failure of the maker to perform the contract. And that is the present import of all guaranties which are conditional or dependent upon some prior act to be performed by some other party, as that the note or contract is collectible, i. e. may be enforced by due process of law. And even absolute guaranties, like the present, are understood differently, and therefore entitled to a different construction, from an absolute promise to pay a note.

If that had been the purpose of the plaintiff, and those who signed with him in this case, they would have merely underwritten the other signers of this note. The very fact that they made a separate contract, and that in the form of a guaranty, shows very fully that they did not intend a mere joint undertaking with the makers. We think the only fair construction of the plaintiff's undertaking, as between himself and the makers of the note, is, that he bound himself to whomsoever should be the holder of the note, that the signers were responsible and would pay the amount at maturity. And although, as between himself and the holder, this bound him absolutely to the payment of the

note, if not paid by the makers, without notice of the default on the part of the makers, that being a fact of which he was bound to take notice, yet, as between him and them, his undertaking was for them jointly, and not jointly with them.

Judgment reversed and case remanded.