THE BANK OF MONTPELIER *v.* FRANK H. JOYNER, ROLLA GLEASON AND JOSEPH WHIPPLE.

*Promissory Note. Principal and surety. Action.*

J., being indebted to P., gave him a note signed by himself and sureties, payable to a bank, with the agreement with P. that the latter should procure it discounted, and apply the proceeds on his debt, and that if it could not be discounted, it should be returned, but this agreement was unknown to the sureties. P., being unable to procure the note discounted, left it with the bank as collateral security for a debt he owed them, and so informed J. who made no objection thereto. After its maturity, the note was by agreement between J. and P., and without the sureties' knowledge, applied on the former's indebtedness to the latter, and P. took the note from the bank, which had previously commenced suit upon it in their own name against all the makers, and thereafter the suit was prosecuted solely for the benefit of P.; *Held,* that the action could be maintained.

If a note be signed by principal and surety, by its terms payable to a particular bank, for the purpose of raising money upon it, it is no defence for either of the makers that it is not discounted by the bank, but by another party.

ASSUMPSIT upon a promissory note dated April 18, 1854, for two hundred dollars, signed by the defendants, and payable to the plaintiffs or bearer three months after date. Plea the general issue and trial by the court at the September Term, 1857, in Washington county,—PECK, J., presiding.

The execution of the note by the defendants, and the fact that Gleason and Whipple were mere sureties thereon, were admitted.

It appeared that at the time the note in question was executed, Joyner was indebted to Joseph Poland to the amount of six hun-

31

dred dollars, secured by mortgage upon Joyner's real estate, and that this note was delivered by Joyner to Poland under a written agreement that the latter should procure it to be discounted, and apply the proceeds on Joyner's mortgage debt, and that if it was not discounted it was to be returned to Joyner.   The sureties, however, were not aware of this agreement between Joyner and Poland, but signed the note at Joyner's request without receiving any information from him or elsewhere as to what was to be done with it.

The plaintiffs declined to discount the note, whereupon Poland, who was indebted to them, left it with them as collateral security for such indebtedness, and on the 15th of May, 1854, he so wrote to Joyner.   He also wrote him to the same effect on the 17th of July, 1854, and also that the plaintiffs would give up the note if his, Poland's, debt to them could be paid, and in each letter he urged him to take up the note, and give him some paper or security on which he could realize the money to apply on his mortgage claim against Joyner.   It did not appear that Joyner made any objection to the course Poland had taken with the note, and it remained in the plaintiffs' hands until the summer of 1855, when Joyner paid his mortgage debt to Poland in money with the exception of the amount of the note in question, which by agreement between him and Poland, the latter then took in payment of the balance of such debt and so applied it.   The note still remained in the plaintiffs' hands as before, as collateral security for Poland's indebtedness to the bank, being the same debt which existed when they first received the note.   The plaintiffs, with Poland's assent, commenced this suit upon such note, shortly after which Poland paid them in full, and took it, after which the plaintiffs had no interest in the note or suit, and the latter was prosecuted solely for Poland's benefit.   The defendants, Gleason and Whipple, were not aware of what had been done with the note, where it was, or whether it was paid at maturity or not, until shortly before this suit was commenced.

Upon these facts the county court rendered judgment for the plaintiffs against Joyner for the amount of the note, and for the other defendants against the plaintiffs for their costs, to which the plaintiffs excepted,

*Peck & Colby*, for the plaintiffs.

*Dillingham & Durant*, for the defendants, Gleason & Whipple.

ALDIS, J. The defendant was indebted to Joseph Poland upon notes secured by mortgage to the amount of six hundred dollars. Poland, being indebted to the Bank of Montpelier, applied to Joyner for money due from him on his notes, in order to pay the bank. Thereupon Joyner executed the note now in suit payable to the Bank of Montpelier and delivered it to Poland, for him to get discounted and to apply the avails on his mortgage notes against Joyner. He took a paper from Poland acknowledging the receipt of the note, and that when discounted Poland should apply the avails on the mortgage note, and that if not discounted the note was to be returned.

It appears that the two defendants, Gleason and Whipple, signed the note as sureties, but without any knowledge of the writing which Poland gave Joyner. To them it appeared merely as a note which they signed to enable Joyner to borrow money of the Montpelier Bank. The whole object of making the note was, on the part of Joyner to raise money to apply on the mortgage note, on the part of Poland to get pay on his mortgage note to be applied in extinguishment of his debt to the bank.

Instead of getting the note discounted (for the bank refused to discount it) Poland left the note with the bank as collateral security for the debt he owed them, they allowing his notes to them to remain unpaid, and he allowing his mortgage note against Joyner to remain as it was. Was this such an unauthorized act such a departure from the purpose for which the note was given, as to make the note void in the hands of the bank ?

The question whether a note given to raise money and made payable to a particular bank with the expectation of there getting it discounted, is valid in the hands of a third person advancing the money on it to the principal, has been differently decided by different courts. In Maine, Massachusetts and Ohio it is held not to be a valid note as against the sureties. In New Hampshire, Vermont and New York the contrary doctrine has prevailed. In a recent case in this county the whole subject was very fully

considered, and the principle as previously held here re-affirmed. The opinion of Ch. J. REDFIELD, in *Keith* v. *Goodwin,* in the 31st Vermont, reviews all the cases cited by the defendants' counsel on this argument, and makes any special examination of them now superfluous, and must be considered as the law upon the subject. Is there in substance any difference between that case and this ? In that case the bank refusing to discount, the money was advanced by a third person ; here the note was received by the bank as security instead of payment upon the debt to which its avails if discounted were to apply. If Poland did not object to this, Joyner and his sureties could not, for it could make no difference with them. The liability of the signers remained the same, and the very object for which the note was given was not departed from, but was in substance secured. If Poland had taken the note to some third person and got the money on it, it would have been exactly like *Keith* v, *Goodwin.* What difference is there if he retains it in his own hands to be treated as so much cash to be applied on Joyner's note, or by pledging it to the bank thus makes it his own and entitles Joyner to treat it as cash. It is plain that Joyner's and his sureties' liability is precisely the same. It is said that if not discounted it was to be returned, but as between Poland and Joyner it may be treated as discounted in substance, for Poland by using it as his own precluded himself from saying that it was not discounted, and he did in fact accomplish the very end which a discount would have effected. As to the sureties they knew nothing of the writing that was given by Poland to the defendant, and can have no higher equitable rights than Joyner. In principle we think the rights of the parties in this aspect of the case settled by the decision in *Keith* v. *Goodwin.* Since the decision of that case, we notice a recent decision in the 38th vol. of N. H. Rep., *Bank of Newbury* v. *Rand,* which very fully examines the authorities on this point and affirms the principle as held in this State. The case of the *Bank of St. Albans* v. *Smith,* in the 30th Vt., has been pressed upon the court as inconsistent with the view here taken. But we think a careful study of the two cases will not only show that they are consistent, but will well illustrate the principles upon which the decisions are founded, and why they are different. In the *Bank of St.*

*Albans* v. *Smith*, the principal applied the note to a new use not contemplated by the surety, and which increased and extended his liability. He pledged the note as security for future advances, and that for an indefinite period of time and beyond the time at which the note matured, and the debt sought to be recovered of the surety was for advances made long after the note matured. If Smith had pledged the note for moneys then due from him to the bank, the case would have been like the one at bar. It is obvious that that case turned upon this very distinction ; that it was a use which subjected the surety to an entirely new liability, viz., that of a continuing guarantor. But in the case at bar it made no difference to the defendants whether the note was held by the bank as discounted paper and applied to Poland's use, or held as collateral, and applied to the same use. The original purpose remained unaltered and was accomplished, whatever the form of the transaction as between Poland and the bank. And this is the important fact which distinguishes the two cases, and illustrates the principles upon which they stand. In the one the original purpose was departed from, in the other it was pursued, and in substance attained.

II. If the note was valid in the hands of the bank against Joyner it was as against the sureties, and thereby Joyner acquired the right at once to have the amount applied on the mortgage note for which it was designed. The application of it by Joyner and Poland was not the reviving of a note that had lain dormant, or that had become dead by the payment of Poland's notes to the bank for which he had pledged it. It was but doing that with it which Poland was long before bound to do, to apply it as payment on the mortgage note. He had substituted the note now in suit with its security for the mortgage note, by the use he had made of it, the very use for which it was intended, and so doing, by the agreement of the parties, he was bound to make the application which was made of it. By this application the original agreement was performed, and the original object attained.

III. There is still another view to be taken of this case. Before the note fell due, viz., on the 15th of May, and 17th July, 1854, Poland, by his letters informed Joyner that it was not discounted

but left with the bank as security for the note he owed them; that the bank would give it up if his debt to them could be paid, and asks Joyner to allow him to use the note. To this Joyner does not appear to have made any objection, but allowed the note to remain in the bank for about a year when he applied it in payment on his mortgage notes to Poland. This conduct clearly shows that he waived the restriction that it should be returned if not discounted, and that before the note fell due, thus ratifying the use Poland had made of the note. The sureties knew nothing of this writing, and if Joyner saw fit to waive it, they could not complain.

This suit was brought while the note was in the hands of the bank. Their equitable interest has since passed to Poland, but it would be manifestly unjust if the court refused to allow the case to remain in the name of the bank, for the benefit of the real owner, so long as the bank makes no objection and the rights of all others are fully preserved.

Judgment reversed, and judgment rendered for the plaintiffs against all the defendants for the amount of the note.