REUBEN B. DUNN *vs.* NATHAN WESTON and another.

Kennebec.     Opinion June 28, 1880.

*Accommodation note. Liability of maker. Transfer by treasurer of savings bank.*

The maker of a note payable to a savings bank for the accommodation of a third party to enable such party to raise money thereon, without restriction or limitation as to its use, is liable on the same to one, who, on its delivery by the party to be accommodated, has advanced the amount due and the money has been appropriated to the purpose for which the note was given.

The note being received, the surrender of the first note is a sufficient consideration for a new note similar in form.

The indorsement by the treasurer of the savings bank passes the title.

ON REPORT.

The facts are stated in the opinion.

*Foster & Stewart,* for the plaintiff, cited: Rule 10, S. J. C.; 3 Kent's Com. 105, 106, 152; 2 Parsons, Notes & Bills, 27, 28, 445, 204; *Clinton Bank* v. *Ayres* 16 Ohio, 282; *Elliot* v. *Abbot,* 12 N. H. 549; *Cross* v. *Rowe,* 2 Foster, 77; 61 Maine, 512; 1 Parsons, Bills & Notes, 226; *McGuire* v. *Godsby,* 3 Call. 234; 5 Wend. 49; 37 Maine, 442.

*Orville D. Baker,* for the defendants.

The treasurer of a saving bank has no right, *virtute officii*, to transfer title to paper never negotiated by the bank and outside of the ordinary course of business. For this he must have special authority, which cannot be implied from the facts in this case. *Chase* v. *Hathorn*, 61 Maine, 513.

This was an accommodation note purely, and the plaintiff knew it, and that it was made for negotiation at a particular bank, hence he could acquire no right of action against the makers. 2 Daniels on Neg. Inst's, § § 1190, 1332, 1328.

Both defendants stood in the light of sureties, and entitled to all the defences of sureties. Brandt on Suretyship, § § 17, 95; *Lime Rock Bank* v. *Mallett*, 34 Maine, 547; *Cummings* v. *Little*, 45 Maine, 183; *Knox Co. Bank* v. *Lloyds*, 18 Ohio stat. 353.

And it is well settled that where a note is made payable to a particular person, but is purchased by a third person, not the payee, with the knowledge that a signer of the note is surety only, the contract signed is never completed and the note is void as to such sureties and accommodation makers. *Granite Bank* v. *Ellis*, 43 Maine, 367; *Skowhegan Bank* v. *Baker*, 36 Maine, 154; *Manufacturers' Bank* v. *Cole*, 39 Maine, 188; *Prescott* v. *Brinsley*, 6 Cush. 233; *Allen* v. *Ayres*, 3 Pick. 298; *Bank* v. *Ayres*, 16 Ohio stat. 283; *Russell* v. *Ballard*, 16 B. Mon. (Ky.) 201.

APPLETON, C. J. This is an action against the defendants on a promissory note for $5000, dated June 17, 1874, payable in four months, to the Waterville Savings Bank or order, and indorsed by bank to the plaintiff.

The following facts appeared in evidence :

On February 17, 1874, the defendants made their promissory note to the Waterville Savings Bank, for five thousand dollars on four months. The note was given for the accommotion of the Somerset Railroad Company, but that corporation was not a party to it. The defendants, one of whom was a director of the railroad company, signed the note without any consideration to enable the railroad company to raise money, the company pledging $5500 of its bonds as collateral and its officers

agreeing to save the defendants harmless. The note was offered to the Waterville Savings Bank, but they declined taking it because not then in funds but agreeing to discount it, when in funds.

The note not being taken by the bank, the plaintiff with a full knowledge of the purpose for which the note was given, discounted the note, receiving the $5500 of railroad bonds at the same time as collateral security. The money thus advanced, was paid to the Somerset Railroad Company, for whose accommodation the note had been given.

The plaintiff retained the note and bonds in his possession, until July 15, 1875, when he negotiated a loan of $5000 for himself, pledging as collateral the note of Flint & Weston, $5500 of the railroad bonds before mentioned, and $5000 of their bonds belonging to himself.

When the plaintiff negotiated his loan, the Flint & Weston note was overdue. At the instance of the bank, that note was renewed by the one in suit, which was left as collateral in place of the original: The note not being paid at its maturity, the plaintiff paid his note and the bank indorsed the note in suit and surrendered it to him with the bonds, which had been left in their possession as collateral.

The note first given was an accommodation note for the purpose of enabling the Somerset Railroad Company to raise money. No limitation or restriction was placed upon its disposition. The Somerset Railroad Company was no party to the note. The defendants signed as principals and they must be so regarded. They did not sign as sureties or indorsees nor can they claim to be treated as such. The plaintiff took the note in good faith and paid its full value. The funds he advanced upon the note were appropriated to the purpose for which it was given. To the defendants, it was immaterial by whom the funds were advanced on their note. Their liability was none the greater because advanced by the plaintiff, than if by the payee.

The question then is, are the makers of the note in suit liable thereon?

The defendants in the first note signed by them, held themselves out as makers, not as sureties. They gave an accommodation note on which money was to be raised. "The maker of an accommodation note cannot set up the want of consideration as a defence against it in the hands of a third person, though it be there as collateral security merely. He, who chooses to put himself in the front of a negotiable instrument," observes BLACK, C. J., in *Lord* v. *Ocean Bank*, 20 Penn. 384, "for the benefit of a friend, must abide the consequence and has no more right to complain, if his friend accommodates himself by pledging it for an old debt, than if he had used it in any other way. This was decided in 3 Barr. 381, in a case resembling the present. Accommodation paper is a loan of the maker's credit, without restriction as to the manner of its use." In *Bank of Newbury* v. *Rand ei al.* 38 N. H. 166, the facts were somewhat like the case at bar. Then the defendants, for the purpose of raising money for the use of a railroad, signed a note payable to a bank and delivered it to an agent to procure it to be discounted, but the bank refusing to advance the money, the agent obtained a larger sum of other persons upon the notes of the corporation, and its directors, and pledged the note of the defendants with the bonds of the corporation, as collateral security, and the money was appropriated to the use of the road. *Held*, that the notes of the corporation not being paid, a suit could be maintained on the note of the defendants, in the name of the bank for the benefit of those who advanced the money. "The principle of the case is this," observes EASTMAN, J., "that when a note is made to raise money, it does not change the liability of the parties to the note that the money is advanced by a third person, instead of the payee. In the case just cited as in the case at bar, no restriction was made upon the use of the note. These views are sustained in *Elliot* v. *Abbot*, 12 N. H. 549 ; *Cross* v. *Rowe*, 22 N. H. 77 ; *Hunt* v. *Aldrich*, 27 N. H. 31 ; *Bank of Chenango* v. *Hyde*, 4 Cow. 567 ; *Bank of Rutland* v. *Bush*, 5 Wend. 66. "He lent his notes," observes WOODRUFF, J., in *DeZeng* v. *Fyfe*, 1 Bosworth, 336, "for the very purpose of enabling the payee to use his credit in any manner which the

exigencies of their business required or made convenient to them. The notes were used accordingly." The signers were held liable notwithstanding the notes were pledged as collateral for an antecedent debt. In *Robbins* v. *Richardson*, 2 Bosworth, 253, WOODRUFF, J., uses the following language : "We regard it as fully settled, that, when a note is made for the accommodation of a payee and delivered without any *restriction* or *limitation of his authority* to use it, he may appropriate it to such uses (being in themselves legal) as his convenience or pleasure may dictate ; and the holder is not bound to prove, that he parted with value, as the consideration of the transfer to himself. He may recover thereon, although he received it in payment of a preceding debt, or received it as collateral security for such indebtedness. Indeed mere proof, that a note is an accommodation note, is not sufficient to cast upon an indorsee the burden of showing upon what consideration he did receive the note." The indorsee of an accommodation note is entitled to recover in cases exempt from fraud, by proving that it was received in satisfaction of an existing debt or as a collateral security for its payment. *Lothrop* v. *Morris*, 5 Sandford, 7.

So one who takes an accommodation note after its dishonor, may recover from the maker or indorser if it be used for the purpose for which it was given. 2 Parsons on Bills & Notes, 28 *et seq*. The party giving the accommodation, must show he was injured by the misappropriation. "If the indorsee knew of the fact of the paper being made for accommodation at the time he received it, there could be no difference whether he received it before or after it fell due. The question would be in either case, how far the fact of its being given for accommodation afforded ground of defence in the hand of the holder for value. And the question, it seems to us, will always depend upon whether the paper was used by the party accommodated in the manner contemplated by the original parties, and especially by those signing or indorsing for accommodation. It is true, this question will not be important when the paper passes while current ; but when the paper is taken when over due, or with knowledge that it was given for accommodation, the defence is equally available. And

in both cases the proper question seems to be, whether the paper was misapplied by the party accommodated. If not, the holder may recover to the extent of his interest. Redfield & Bigelow's Leading Cases on Bills of Exchange, 216 ; *East River Bank* v. *Butterworth*, 45 Barb. 476 ; unless there is an agreement restraining the transfer of an accommodation note after due, and it is used for the purpose for which it was given, it is immaterial whether the holder advances money upon it before or after its maturity. *Sturtevant* v. *Ford*, 4 Manning & Granger, 102 ; *Stein* v. *Yglesias*, 1 Cromp. Mees. & Ros. 565 ; *Harrington* v. *Dorr*, 3 Robertson, 283 ; *Maitland* v. *Citizens' National Bank*, 40 Md. 540.

The plaintiff advanced the money on the defendants' note of February, 1874. The money went to the use of the Somerset Railroad, for whose benefit it was made. It came into his hands, either from the railroad or from the bank — but presumably from the railroad as the contemplated railroad bonds which were to be the security for its payment were delivered at the same time. Whether sold, pawned or pledged for the money advanced, the note came rightfully in the plaintiff's possession. Being in his hands for value and in good faith, he might maintain an action upon it in the name of the bank with its assent, or the bank might indorse it, and he could sue it in his own name. *Lime Rock Bank* v. *Macomber*, 29 Maine, 565. From the circumstances of the case, considering the object which the defendants had in view, and which they wished to be accomplished, we think there was an implied permission that the money might be obtained where it could be most advantageously procured. *Chase* v. *Hathorn*, 61 Maine, 513. When the principal throws the note in the market to raise money on it with the assent of the sureties they are liable. *Starrett* v. *Barber*, 20 Maine, 457. But here originally there were no sureties. The defendants are principals.

In the cases cited in defence, the facts were essentially different from the one at bar. They were all cases of suretyship. In *Adams Bank* v. *Jones*, 16 Pick. 575, which is the leading case on the subject, the bank declined to allow a suit to be

brought in its name, and there was a fraudulent misappropriation of the note. In *Skowhegan Bank* v. *Baker*, 36 Maine, 154, the suit was brought without the express or implied assent ·of .the bank, and was not therefore maintainable. In *Manufac-*.turers' Bank v. *Cole*, 39 Maine, 189, the note in suit was diverted from the purpose for which 'it was executed, without the consent ·of the surety. The same was the case in *Rhodes* v. *Ayer & Neil*, 16 Ohio, 282. In *Granite Bank* v. *Ellis*, 43 Maine, 368, it was held the action was maintainable against the maker, but not .against the surety unless the transfer was made by his consent.

The note first given being valid in the hands of the plaintiff ·or of the bank as pledgee, the giving up of the first note is a good consideration for the note in suit. *Dockray* v. *Dunn*, 37 Maine, 442. It is immaterial whether the defendants knew or ·did not know that the plaintiff had advanced the funds for the railroad, and that the savings bank had not.

The indorsement by the savings bank was valid and passed the ·legal title to the plaintiff. The assent of the bank may be inferred from the acts of its officers as disclosed in the evidence. Indeed the suit is prosecuted by its president, who is the attorney ·for the plaintiff. *Chase* v. *Hathorn*, 61 Maine, 507, and cases ·cited.

*Judgment for plaintiff.*

WALTON, BARROWS, DANFORTH, PETERS and SYMONDS, JJ., ·concurred.