## EVANS *v.* SPEER HARDWARE COMPANY.

### Opinion delivered April 2, 1898.

1. ACCOMMODATION NOTE—NOTICE.—Knowledge that a note is in the hands of one of the joint makers, to be negotiated for his benefit, is sufficient to give notice that the other makers signed for accomodation merely. (Page 209.)

2. SAME—EFFECT OF SIGNING.—One who signs negotiable paper for accommodation confers authority on the party accommodated to bind him in favor of third persons by the issue of the paper. (Page 209.)

3. SAME—INDORSEMENT.—An indorsement without recourse of an accommodation note by the payee, who has no interest therein, for the purpose of enabling the note to be negotiated is not contrary to the usages and customs of commercial transactions. (Page 209.)

4. BONA FIDE HOLDER—CONSIDERATION.—One who takes negotiable paper in payment of an antecedent debt, before maturity, and without notice, actual or otherwise, of any defect therein, receives it in due course of business, and is a holder for value. (Page 210.)

5. SAME—ACCOMMODATION PAPER.—The *bona fide* holder for value of accommodation paper taken in the regular course of business may enforce it

against the makers, although he knew when he received it that it was accommodation paper. (Page 210.)

6. ACCOMMODATION NOTE—TRANSFER.—An accommodation note, put into the hands of the party accommodated solely for the purpose of enabling him to raise money, although made negotiable and payable at and to a particular bank, which is named as the payee, is good against the makers in the hands of a third party who in good faith received the same before due, and for value, paying for the note the money which it called for. (Page 211.)

7. SAME—DIVERSION OF PROCEEDS.—The fact that the accommodation makers of a note signed it for the purpose of raising money to pay certain debts of the accommodated party, and that the latter diverted the proceeds so raised, will not constitute a defense in favor of the accommodation makers, as against a *bona fide* holder of the note. (Page 212.)

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

STATEMENT BY THE COURT.

Appellee brought suit on the following note. "Fort Smith, Ark., January 16, 1895. No. 1209. Due April 16, 1895. $300.00. Ninety days after date, without grace, we, or either of us, promise to pay to the order of Merchants' National Bank of Fort Smith, Ark., three hundred dollars, for value received, negotiable and payable without defalcation or discount, at the Merchants' Bank, Fort Smith, Ark., with interest from due at the rate of ten per cent. per annum, until paid. Demand, notice and protest waived. Ed. Hiner, D. B. Castleberry, J. H. Evans."

The complaint declares that said note on January 30, 1895, was indorsed by the said Merchants' Bank without recourse, and that said note, before the maturity thereof, and for value, became the property of plaintiff (appellee), that it was past due, and that defendants (appellants), though often requested, refused to pay same. The prayer was for the amount of the face of the note, with interest at ten per cent. from maturity. Ed. Hiner did not answer, and judgment was rendered against him by default. The answer of Evans and Castleberry admitted that they executed the note sued on, but denied that appellee was an innocent holder thereof for value, denied that it was a holder at all as against the appellants, and declared the facts to be substantially as follows: "That they signed said note

as sureties for Hiner, for his accommodation merely, no consideration moving to them; that they became such sureties for the purpose of aiding Hiner to borrow said sum from the Merchants' Bank, with an agreement and understanding with him that the money so borrowed should be applied to the payment of certain debts, part of which was owing to Evans, and the remainder were debts upon which Evans and Castleberry, or one of them, were sureties for said Hiner; that Hiner offered said note to the Merchants' Bank, and it declined to accept it, and afterwards Hiner took it to plaintiff, and it took it as a security or a payment for a debt owing it by Hiner, upon which these defendants were not securities, and paid said Hiner a sum of money, amount unknown to the defendants, no part of which was applied to the payment of any of the debts upon which defendants were security, and which were agreed to be paid from the proceeds of the note. That the Merchants' Bank never had any title, right, interest, or claim to said note, which fact was well known to plaintiff when it acquired the same. That the action of Hiner in negotiating said note to plaintiff was without the knowledge, authority or consent of Evans and Castleberry, and has never been ratified. The defendants aver that the plaintiff is not an innocent purchaser for value, in the due course of trade, of said note, but took the same with knowledge that these defendants were sureties for Hiner, with knowledge that the note was being diverted from its original purpose, and did not acquire any right of action thereon as against these defendants."

Counsel for appellant states the facts as follows: Hiner applied to Evans and Castleberry to become his sureties on note for $500. It was finally agreed that they would become his sureties on note for $300 to American National Bank, and did so, but the bank refused the notes. From the proceeds of the money so derived, Hiner was to pay certain other debts that Evans and Castleberry, or either of them, were sureties on, and gave them a mortgage of indemnity on 360 acres of land, indemnifying them for their suretyship upon said note to American National Bank, and three other notes therein specified, and any other matters upon which they might become his sureties, and also for any extensions or renewals of their present suretyship, or

anything in lieu thereof.  At about the same time Hiner exe-
cuted the mortgage and note to American Bank, he got Evans
to indorse his note to Paris Bank for $100, due in ten days,
which was to have been paid from the proceeds of note to
American National Bank.  After American National Bank
refused to take the note, Hiner brought it back to Evans and
Castleberry, and told them he could get the money from the
Merchants' Bank at Fort Smith, and Evans wrote a note
payable to Merchants' Bank, and he and Castleberry signed
it with Hiner.  No instructions or restrictions were given,
the note was expressly payable to order of Merchants' Bank,
and nothing was said about getting the money else-
where.  Hiner presented it to Merchants' Bank.  It de-
clined to take the note.  Then he took it to Speer Hard-
ware Company, and it agreed to take the note if he would
pay a bill he owed them, and, upon his agreeing thereto, either
Hiner or C. E. Speer (the testimony differs as to which, and it
is immaterial) had the cashier of Merchants' Bank indorse the
note without recourse.  The bank had no interest in the note
when it made that indorsement, and that fact was known to
plaintiff.  It was purely an indorsement so as to show title on
the face of it.  Speer Hardware Company deducted about $88
or $89 from the $300 note, and paid Hiner the difference.
Hiner paid no part of the surety debts, nor performed any part
of his obligations agreed upon as a condition to signing the
note, according to the testimony of Evans and Castleberry, ex-
cept a payment of the Bank of Paris note.

To this should be added that, according to the understand-
ing between Hiner and appellants, the latter were interested in
the application of the proceeds to be realized from the note, but
the appellee had no notice of this fact, nor of any understand-
ing between Hiner and appellants as to how the proceeds of the
note were to be applied by Hiner, nor that they had signed upon
any conditions.  The note was transferred to appellant before
maturity, the indorsement being as follows:  "Without recourse,
Merchants' Bank, Fort Smith, Ark.; C. S. Smart, cashier."

Verdict was for the full amount of the note, with interest,
and judgment entered accordingly, which this appeal seeks to
reverse.

*Hill & Brizzolara*, for appellants.

The note, being diverted from its original payee, is not binding upon the sureties, unless such diversion is ratified. 16 Ohio, 283; 10 Johns. 182; 9 Wheat. 703; 18 Ohio St. 353; 36 Vt. 536; 16 Pick. 574; 24 Iowa, 15; 32 Iowa, 22. Where a note is given to raise money for any special purpose, any diversion releases sureties (9 Wend. 170; 10 Johns. 198; 37 Ia. 618; 73 N. Y. 279), unless the holder can show that he received it in due course of trade and without notice. 10 Johns. 231; 15 Johns. 270; 6 Wend. 615; 65 N. Y. 438. The note was not a general letter of credit. Anderson's Law Dict. 613. There was no ratification, by the sureties, of the act of the maker in negotiating the note to a party and for a purpose other than that contemplated by the contract of suretyship. No conduct or silence of appellants induced any change in situation of or any damage to appellee; hence, no estoppel. Bigelow, Estoppel, 588–596, and notes. Where there is an agency, ratification may be inferred from acceptance of benefit; and where there is no agency, estoppel may arise from such acceptance. Mechem, Agency, §§ 148–150; Bigelow, Estoppel, 683–687. Ratification is a question of intention, express, or implied. 32 Pa. St. 347; Mechem, Agency, §§ 110, 146–7. There having been no agency or contract, any confirmation of the unauthorized sale would have to be on a new consideration. 55 Ark. 423; 82 N. Y. 327; 16 Mich. 259; Mechem, Agency, §§ 62–63; Ewells' Evans, Agency, * 62 and 63.

*Ira D. Oglesby*, for appellee.

Appellants did not restrict the negotiation of the note to any party; hence they are bound by it in the hands of any one to whom the holder negotiated it. 48 Ark. 454; 11 Conn. 388; 5 How. (Miss.) 301; 10 B. Monroe, 266; 5 Wend. 66; 112 Ind. 207; 17 Johns. 176; 71 Maine, 270; 38 N. H. 166; 36 Vt. 554; 10 Johns. 198; 10 Wend. 315; Daniel, Neg. Inst. § 792; 30 S. W. 637; 28 S. W. 348. Ratification is equivalent to prior authority. Mechem, Agency, § 135. As to what amounts to ratification, see Mechem, Agency, § 148, 153, 154, 157; 79 Am. Dec. 385 and note p. 387.

WOOD, J., (after stating the facts.)  There is nothing upon the face of the note to show the status or relation of the signers to each other.  Appellants are not indorsers.  They do not sign as sureties, but appear upon the face of the paper as makers.  The proof, however, shows that appellants are makers for the accommodation of Hiner.  The note was in Hiner's hands, to be negotiated for his benefit, which appellee knew.  This was sufficient notice to it of the character of the instrument.  1 Am. & Eng. Enc. Law, 367.

. Can appellee, the holder of accommodation paper, having knowledge of its character when it was received, recover of appellants, the makers of such paper?  One who signs negotiable paper for accommodation confers authority on the party accommodated to bind him, the accommodation party, in favor of third persons by the issue of the paper.  And when such paper has been negotiated, the maker is bound to the payee, indorser, or holder from the date of the instrument, according to the rules of the law merchant.  1 Am. & Eng. Enc. Law (2d Ed.), pp. 340, 350.

The note in suit was a negotiable promissory note, signed by appellants, and turned over to Hiner "for the purpose of getting money on it."  They gave it to him to get the sum of $300 from the bank, but, in the language of one of the appellants, "it was immaterial where he [Hiner] got the money from; they had no objection to where he got the money, and made no restriction; did not tell him from whom he should get it; nothing was said about it."  The note was indorsed by the payee in blank.  This transferred the legal title.  The note thereafter passed by mere delivery to the one who paid value, the same as if payable to bearer, and the holder thereof had full authority to demand payment of it.  Story, Prom. Notes, p. 184.  It was immaterial whether the indorsement was procured by Hiner or by the appellee, and that appellee knew the bank had no interest in the note, and only made the indorsement to show title on the face of it.  This was done to enable Hiner to do just what the makers designed he should do,— "raise money on it."  The bank declined to take it, and signified the fact that it had no interest in it, and was willing for any one else to take it, by indorsing it in blank without re-

course, and delivering it back to the maker in this shape, to be negotiated to whomsoever he pleased. We cannot say that the indorsement was out of the usual course, i. e., "contrary to the usages and customs of commercial transactions." Tied. Com. Paper, § 294; *Kellogg* v. *Curtis*, 69 Me. 212; Daniel, Neg. Inst., § 778.

Was appellee a *bona fide* holder for value? The general manager of appellee, who made the negotiation for the note, was informed by Hiner, who had the note, "that the note was made to get money to pay his indebtedness to appellee and other money he owed." There was no infirmity upon the face of the note itself. It had not reached maturity. There was nothing in the circumstances of its holding or transfer to excite suspicion, or to give notice of anything except the character of the instrument. Appellee took it to enable Hiner to do what he informed appellee the makers designed that he should do. Appellee paid Hiner in cash the sum of $212 or $213, and applied the balance of the note on Hiner's debt to it. This court in *Tabor* v. *Merchants National Bank*, 48 Ark. 454, said that "one who takes negotiable paper in payment of an antecedent debt, before maturity and without notice, actual or otherwise, of any defect thereto, receives it in due course of business, and becomes, within the meaning of commercial law, a holder for value." The *bona fide* holder for value of accommodation paper taken in the regular course of business may enforce it against the makers, although he knew when he received it that it was accommodation paper. 1 Am. & Eng. Enc. Law (2 Ed.), 360, note 6.

We are of the opinion therefore that appellee is a *bona fide* holder for value of the note in suit, and as such entitled to recover the full amount sued for.

The foregoing, however, is based upon the assumption that the note was not fraudulently put in circulation, or diverted from the purpose designed by its makers. The appellants contend that, as payee bank declined to discount the note, its transfer thereafter was a diversion, and that therefore the note has no validity in the hands of appellee. The learned counsel for appellants has pressed this view with his characteristic vigor of argument and diligence in the citation of authorities.

The cases which he cites from Ohio and Massachusetts support the proposition for which he contends ( *Clinton Bank* v. *Ayres,* 16 Ohio, 283; *Adams Bank* v. *Jones,* 16 Pick. 574), and there are others to same effect; so that it may be said that the authorities are not in accord upon the proposition.

But the weight of authority and the better reason maintain the doctrine we here announce, that an accommodation note put into the hands of the party accommodated solely for the purpose of enabling him "to raise money," although made negotiable and payable at and to a particular bank, which is named as the payee, is nevertheless good against the makers in the hands of a third party who in good faith received the same befor due and for value, paying for same the money which the note calls for.    *Winters* v. *Ins. Co.,* 30 Ia. 172; *Laub* v. *Rudd,* 37 Ia. 618; *Bank of Burlington* v. *Beach,* 1 Aik. (Vt.) 62; *Keith* v. *Goodwin,* 31 Vt. 268; *Bank of Montpelier* v. *Joyner,* 33 Vt. 481; *Bank* v. *Bingham,* 33 Vt. 621; *Bank* v. *Richards,* 35 Vt. 281; *Farm. & Mech. Bank* v. *Humphrey,* 36 Vt. 554; *Bank* v. *Hyde,* 4 Cowen, 567; *Powell* v. *Waters,* 17 Johns. 176; *Smith* v. *Moberly,* 10 B.ᴱMon. 271; *Meeker* v. *Shanks,* 112 Ind. 207; *Dunn* v. *Weston,* 71 Me. 270; *Bank* v. *Rand,* 38 N. H. 166; *Utica Bank* v. *Ganson,* 10 Wend. 315; *Moreland* v. *Bank,* 30 S. W. (Ky.) 384; *First Nat. Bank* v. *Wood* (Tex.), 28 S. W. 384; *Gilbert* v. *Duncan,* 29 N. J. L. 133; *Purchase* v. *Mattison,* 6 Duer, 587; *Reed* v. *Trentman,* 53 Ind. 433; *Morris* v. *Morton,* 14 Neb. 358; *Lord* v. *Bank,* 20 Penn. St. 386; *Perkins* v. *Ament,* 2 Head (Tenn.), 110.    See, also, following text writers:    1 Dan. Neg. Ins. § 792. 2 Pars. Notes & Bills, p. 28; 1 Am. & Eng. Enc. Law (2 Ed.), 381; Bigelow, Bills & Notes, p. 457.

The testimony of appellants themselves makes it clear that they did not make the discount of the note by the bank a condition precedent to the validity of the note.    Simply naming the bank as payee did not have that effect.    The reasoning of the Ohio court in *Clinton Bank* v. *Ayres, supra,* which holds the contrary doctrine, is as follows: "The makers [sureties] might be willing to loan their credit and become indebted to some particular creditor, but not to another.    They might be willing to lend their name to procure a loan from a party who would

advance to their principal the full face of the note, when they would be entirely unwilling to go security to one who was their personal enemy, or who would exact harsh terms or heavy interest of their principal. They might have been williug to aid him in procuring a loan of ready cash, when they would have been unwilling to become his surety for an old debt," etc. This reasoning is not satisfactory to us, for when one makes his paper negotiable he contracts with reference to the law applicable to such paper. Even had the bank in the case at bar discounted the note, the next instant, by an indorsement such as we have here, it might have passed it into the hands of the very persons with whom, according to the reasoning of the Ohio case, the makers were unwilling to contract.

In *Keith* v. *Goodwin*, 31 Vt. 274, it is said: "When a note is executed for the purpose of raising money in the market, although made payable to a particular firm or bank, it is well understood that this is generally regarded by business. men as rather a formal than a substantial part of the note. If the note were made payable at a particular bank to the order of the makers, it would be much the same thing. So, too, if made payable to bearer generally. The name of the person to whom the note is payable is mere form. It is understood that it is going into the market as money, and in exchange for money to any party who will make the discount. If negotiated at the bank, it may pass into other hands the next hour." This is the sound doctrine, where the law merchant is untrammelled in its operations by statutory enactment.

But it may be said that the note was used in part to pay a pre-existing debt of $88 or $89, and that this constituted a material diversion. If this were true, it could only defeat appellee's right of recovery *pro tanto*. But the payment of the antecedent debt by Hiner, under the circumstances, was not a diversion. The *gravamen* of appellants' case, as they show by their proof, is not that the Speer Hardware Company purchased the note, for they were willing for any one to purchase who would pay the money for it, but that Hiner failed to pay over the proceeds according to promise. Had Hiner paid over the $212 or $213, all the debts which he agreed to pay as the condition upon which appellants signed would have been fully paid. He

agreed to pay, for one of the appellants, a sum amounting to $190, and for the other, a sum amounting to $50; besides, for both, interest on certain notes, amount not stated. He paid the amount of $120. So that the balance on the debts which Hiner agreed to pay as a condition upon which the appellants signed the notes does not equal the amount which Hiner received from the appellee after paying to it his debt. Appellants are not prejudiced, therefore, by reason of appellee's not paying to Hiner the sum of $88 or $89, but by reason of Hiner's failure to apply the $211 or $212 to the debts which he promised appellants to pay.

Moreover, appellee had no notice of any limitations upon the use of the note. In fact, there were none, except that it was to "raise money." If appellee had paid to Hiner the sum of $300 in cash, and Hiner had immediately paid back to appellee the sum of $88 or $89, the amount of his debt, no one could contend that this would defeat appellee's right to recover. What actually took place was tantamount to this. Hiner informed appellees that the real purpose of the note was to raise money to pay off his debt to appellee and other debts; so appellee deducted the amount of its debt, and paid Hiner the balance. Appellee was in no sense responsible for the misappropriation of the proceeds of the note by Hiner. Appellants trusted Hiner with the note to raise the money. They must be held to have trusted him to make proper application of it. *Tabor* v. *Merch. Nat. Bank*, 48 Ark. 454: *Brooks* v. *Hey*, 23 Hun, 372; *Gray* v. *Bank of Kentucky*, 29 Pa. St. 365; *Moreland* v. *Bank*, 30 S. W. (Ky.) 637; *Dunn* v. *Weston*, 71 Me. 270. Especially is this the case as against one who had no notice that the accommodation makers were interested in the application of the proceeds. As was said in one of the above cases, to hold otherwise "would be against the plainest principles of equity, as well as subversive of the commercial law." See, also, *Stoddard* v. *Kimball*, 6 Cush. 469; *Goodman* v. *Simonds*, 20 Howard, 343, and note the same case, in Bigelow's Bills and Notes.

In this view of the case, the other interesting questions pass out, and the judgment must be affirmed. It is so ordered.